967 F.2d 1186
 22 Fed.R.Serv.3d 1252
 Milton PETERSEN, III, Plaintiff-Appellee,
v.
DOUGLAS COUNTY BANK & TRUST COMPANY; Dale B. Heimann; Amil
A. Chilese; Douglas County Bank & Trust Company, acting in
a fiduciary capacity as Trustee of the Milton Petersen, III
Revocable Trust; and James C. Hupp; Defendants,
A.R. Pantano; Alfred V. Burkley; John P. Houlihan; and
Ronald Kiger; Movants,
Kansas Bankers Surety Company, Movant-Appellant.
 No. 91-2731.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 9, 1992.
Decided June 18, 1992.
 
 Alan V. Johnson, Topeka, Kan., argued, for appellant.
 No argument, for appellee.
 Before McMILLIAN and HANSEN, Circuit Judges, and VAN SICKLE,* District Judge.
 HANSEN, Circuit Judge.
 
 
 1
 Kansas Bankers Surety Company (KBS) was held to be in civil contempt of court for failing to comply with an order requiring the production of certain documents. KBS appeals the decision of the district court finding KBS in contempt and the decision ordering KBS to produce the documents. We affirm in part and reverse in part.
 
 
 2
 Milton Petersen sued Douglas County Bank and Trust (DCB & T) for alleged violations of the Securities Exchange Act and of state tort law. In that action, Petersen served a deposition subpoena duces tecum on KBS, a nonparty witness. KBS insures DCB & T under a financial institution bond that includes coverage for losses resulting from dishonest or fraudulent acts committed by a DCB & T employee. Petersen sought production from KBS of all documents relating to any claim that DCB & T made to KBS for losses resulting from the acts of Dale B. Heimann during a certain time period. KBS and DCB & T resisted the document production request and claimed attorney-client privilege, work product privilege, and confidentiality. Petersen withdrew his claim for most of the documents, conceding their protection under the attorney-client privilege and work product doctrine. After a document-by-document review of the remaining documents at issue, the magistrate judge ordered their production with the exception of seven documents that were protected from discovery under the work product doctrine. KBS appealed the order to the district court and the order was affirmed. After KBS failed to comply with the order, Petersen moved for an order holding KBS in contempt of court. Adopting the report and recommendation of the magistrate judge, the district court found KBS to be in civil, but not criminal, contempt of court and ordered KBS to pay $100 per day until it complied with the order for production of documents.
 
 
 3
 An order finding a nonparty witness in contempt of court is appealable even if final judgment has not been entered in the underlying action. United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76, 108 S.Ct. 2268, 2270, 101 L.Ed.2d 69 (1988) (citations omitted). We have been informed that the underlying action in this case has been settled and that KBS produced the required documents eight days after the contempt order was served. KBS paid Petersen the $800 sanction for its delay in compliance only after obtaining an order from this court, filed September 16, 1991, denying KBS's motion to stay execution and noting that such payment would not render its appeal moot.
 
 
 4
 We review a finding of contempt of court under an abuse of discretion standard. Welch v. Spangler, 939 F.2d 570, 572 (8th Cir.1991) (citing Davis v. Bowen, 894 F.2d 271, 272 (8th Cir.1989)). KBS claims that the finding of contempt was improper because the underlying order, requiring the production of documents, was in error. On appeal, KBS raises two arguments. First, KBS argues that the documents are protected by a qualified privilege of confidentiality between the insurer and the insured. Second, KBS asserts that production of the documents is precluded by the work product doctrine.
 
 
 5
 A common law privilege will not be created unless it "promotes sufficiently important interests" that outweigh "the need for probative evidence." University of Penn. v. EEOC, 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990) (citations omitted). Although Federal Rule of Evidence 501 provides "the courts with flexibility to develop rules of privilege on a case-by-case basis," this authority is not exercised expansively. Id. (citation omitted). KBS argues that a privilege of confidentiality should be recognized in this case for the information KBS obtained from DCB & T regarding their bond claim. The Supreme Court acknowledged the importance of confidentiality when it recognized a qualified privilege for Presidential communications in United States v. Nixon, 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974). That privilege, however, was grounded in a constitutional foundation. University of Penn., 493 U.S. at 194-95, 110 S.Ct. at 584-85. Other privileges of confidentiality recognized by the Supreme Court have either had a statutory or historical basis. Id. at 195, 110 S.Ct. at 585 (citations omitted). Recently applying this analysis to the disclosure of confidential peer review materials in colleges and universities, the Supreme Court weighed the competing interests, determined that recognizing a privilege of confidentiality for such materials was not warranted, and noted the lack of a constitutional, statutory, or historical basis for such a claim. Id. at 188-95, 110 S.Ct. at 581-85.
 
 
 6
 In this case, KBS does not claim any constitutional, statutory, or historical basis for its proposed confidentiality privilege. In addition, the documents that KBS claims are privileged were generally available through discovery from DCB & T. Finally, although KBS claimed injury to the principle of complete confidentiality between an insurer and its insured, it conceded to the magistrate judge that neither KBS nor DCB & T would be injured by the disclosure of the documents in this case. In light of KBS's concession that the documents in question were "not significant at all," the magistrate judge gave little weight to KBS's asserted interest in protecting these documents from disclosure and found that the creation and application of a confidentiality privilege under the facts of this case was inappropriate.[1] We agree and find KBS's claim of a confidentiality privilege was properly rejected.
 
 
 7
 KBS also argues that the work product doctrine precludes discovery of the documents. Under the work product doctrine, discovery of documents prepared in anticipation of litigation by or for another party or by or for that other party's attorney is restricted. Fed.R.Civ.P. 26(b)(3). Documents "prepared in anticipation of litigation" may include business records that were specifically selected and compiled by the other party or its representative in preparation for litigation and that the mere acknowledgment of their selection would reveal mental impressions concerning the potential litigation. Shelton v. American Motors Corp., 805 F.2d 1323, 1329 (8th Cir.1986). Documents are not protected under the work product doctrine, however, merely because the other party transferred them to their attorney, litigation department, or insurer. Id. at 1328. Nor are documents protected that were assembled in the ordinary course of business or for other nonlitigation purposes. Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir.1987) (citation omitted).
 
 
 8
 The magistrate judge reviewed the content of the documents and found that the documents were prepared in the regular course of business and were not prepared in anticipation of litigation. KBS concedes that the documents at issue here are business records. While the work product doctrine does not protect the documents themselves, KBS argues that the selection and compilation of the documents is protected. The affidavit of the President of KBS, Donald Towle, states that "[e]xcept for the notices of claims and the proof of losses filed by DCB & T directly with KBS, all documents regarding the claims of DCB & T were obtained and generated by KBS's outside attorneys." App. 16. The magistrate judge did not address the KBS's assertions regarding the selection and compilation of the documents. While protecting documents created in anticipation of litigation and the documents containing the mental impressions of the attorneys for KBS or DCB & T, the magistrate judge failed to protect those documents selected and compiled in anticipation of litigation. Consequently, the order requiring KBS to produce documents was too broad.
 
 
 9
 We reverse the order to the extent it requires production of documents that were selected and compiled by KBS in anticipation of litigation and affirm the order in all other respects. Because we are affirming the discovery order in part, we find that the district court did not abuse its discretion in finding KBS to be in civil contempt of court.
 
 
 
 *
 The Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota, sitting by designation
 
 
 [1]
 In the order for the production of documents, the magistrate judge summarily dismissed KBS's "catch-all confidentiality claim ... [as] not supported by the briefs or arguments." The district court affirmed the order. In the report and recommendation for the contempt order, the magistrate judge detailed the analysis upon which the rejection of KBS's claim of a confidentiality privilege was based. The district court adopted the report and recommendation