Frank A. SCOUT, Plaintiff,

v.

CITY OF GORDON, Gordon Police Department, Randy Nelson, Rick Deitrick, Ted Ehlers, Sheridan County Alcohol Rehabilitation Center, Tom Morris and John Roberts, Defendants.

No. 7:CV92–3436.

United States District Court,
D. Nebraska.

April 12, 1994.

D. Kirk Wolgamott, Lincoln, NE, for plaintiff.

Terri S. Harder, Jacobsen & Orr Law Firm, Kearney, NE, for defendants Roberts, Morris and Sheridan County Alcohol Rehabilitation Center.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Defendants Sheridan County Alcohol Rehabilitation Center (rehabilitation center), Tom Morris (Morris), and John Roberts (Roberts) have filed a motion for summary judgment (Filing 55). Plaintiff Frank A. Scout (Scout) filed this case pursuant to 42 U.S.C. § 1983, claiming the defendants violated his equal-protection and due-process rights.

Finding that there are no material facts in dispute and (1) that the actions taken by the rehabilitation center and its employees, Morris and Roberts, were not "under color" of state law, (2) that there is no evidence that the rehabilitation center and its employees, Morris and Roberts, discriminated against Scout because of his race, and (3) that there is no evidence that the rehabilitation center and its employees, Morris and Roberts, who would be liable only as supervisors, demonstrated deliberate indifference or tacit authorization of unconstitutional acts after notice, I shall grant the motion for summary judgment on behalf of the rehabilitation center, Morris, and Roberts.

### I.

Following are the undisputed material facts of this unfortunate case:

1. Scout is a Native American. (Filing 1 Compl. ¶ 4.)

2. The rehabilitation center was a nonprofit Nebraska corporation which was dissolved subsequent to the incident in this case. (Filing 93 Wolgamott Aff., Articles of Incorporation; Filing 56, Roberts Aff. ¶¶ 2, 8.)

3. Morris was a member of the board of directors of the rehabilitation center. (Filing 56, Morris Aff.)

4. Roberts was executive director of the rehabilitation center. (*Id.*, Roberts. Aff.)

5. Scout traveled to Gordon, Nebraska, on December 31, 1988. (Filing 1 Compl. ¶ 12.)

6. Scout is a diabetic. (*Id.* at 13.)

7. Sometime on December 31, 1988, police officers, a medical technician for the City of Gordon, and members of the city's rescue squad found Scout collapsed in the street in Gordon, Nebraska. (*Id.*, ¶¶ 16–18.)

8. It was concluded that Scout was intoxicated. (*Id.*, ¶ 19.)

9. The rehabilitation center had a contract with the State of Nebraska which provided the center with most, if not all, of its funds. (Filing 93 Wolgamott Aff. ¶ 2 & Attach. A.)

10. Its contract with the State of Nebraska required the rehabilitation center to provide substance abuse treatment and rehabilitation services, including detoxification services. (*Id.*)

11. The rehabilitation center's contract with the State of Nebraska was consistent with the center's articles of incorporation, which stated in pertinent part that the rehabilitation center was organized "to establish, operate and maintain an alcohol rehabilitation program, including, but not limited to, the operation and maintenance of a halfway house for the controlled rehabilitation of alcoholics." (*Id.*, ¶ 3 & Attach. B.)

12. Believing Scout was intoxicated, police officers and medical personnel took him to the rehabilitation center, where he was admitted. (Filing 1 Compl. ¶ 20.)

13. Scout did not communicate while he was at the rehabilitation center. (*Id.*, ¶ 22.)

14. On the morning of January 1, 1989, the rehabilitation center called the Gordon police department and ambulance service, and Scout was transferred to the hospital, where he was admitted. (*Id.*, ¶¶ 24–29.)

15. Scout was later diagnosed as suffering from a brain hemorrhage and pneumonia; he lapsed into a prolonged coma. (*Id.*, ¶ 30.)

16. For purposes of the motion for summary judgment, it is assumed that the rehabilitation center did not perform any physical or chemical tests of Scout's blood, breath, or urine, that the center did not obtain Scout's medical history, and that employees of the center did not visit, check on, or examine Scout following his admission to the facility until approximately 8:30 a.m. on January 1, 1989. (*Id.*, ¶ 25.)

17. For purposes of the motion for summary judgment, it is assumed that Scout did not consume alcohol at any time during the entire day of December 31, 1988. (*Id.*, ¶ 15.)

18. Scout has admitted he cannot specifically demonstrate what the rehabilitation center, Morris, or Roberts did or failed to do in terms of his treatment while at the rehabilitation center, but he asserts that they failed to promulgate sufficient policies to guard against the alleged unconstitutional actions. (Filing 56, Harder Aff. Answers Interrogs. A, B, C.)

19. Morris' uncontradicted affidavit establishes that: (a) he was treasurer of the rehabilitation center, (b) he made no decisions concerning the day-to-day operation of the center, and (c) he was not present at the center on either December 31, 1988, or January 1, 1989. (Filing 56, Morris Aff.)

20. Roberts' uncontradicted affidavit establishes that: (a) he was the executive director and primary counselor for the rehabilitation center, (b) he was not present at the center on December 31, 1988, (c) although he was not scheduled to work on January 1, 1989, he went to the center sometime after 8:00 a.m. that morning, (d) prior to arriving at the center, he was not aware Scout had been admitted, (e) it was brought to Roberts' attention when he arrived at the center that Scout was not responding physically as he should have if intoxicated, (f) Roberts took Scout's vital signs and then requested that an ambulance be sent to the rehabilitation center so Scout could be taken to the hospital for further evaluation, and (g) Scout was transported to the hospital by ambulance,

accompanied by a police officer. (*Id.*, Roberts Aff.)

21. According to Roberts' uncontradicted affidavit, the rehabilitation center was closed in August, 1989, due to lack of funding; the nonprofit corporation was dissolved; the center's files and records were left in file cabinets sealed with metal banding tape; the files were removed by the City of Gordon, Nebraska, and stored in the basement of the Sheridan County courthouse; and after this action was filed, Roberts learned that the rehabilitation center's records had been destroyed because the center's successor needed file cabinets. (*Id.*, ¶¶ 2, 8.)

## II.

There are three separate reasons for granting the motion for summary judgment in this case. First, there is no evidence that the rehabilitation center, Morris, or Roberts acted "under color" of state law. Second, there is no evidence that the rehabilitation center, Morris, or Roberts discriminated against Scout because he was a Native American. Third, there is no evidence that the rehabilitation center, Morris, or Roberts— none of whom were allegedly actively involved in the failure to treat Scout—demonstrated deliberate indifference or tacit authorization of either the failure to treat Scout or the failure to treat others similarly situated.

By its terms, Federal Rule of Civil Procedure 56 provides that a defendant is entitled to summary judgment if the defendant can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, after adequate time for discovery, summary judgment must be granted when the other party fails to make a showing sufficient to establish the existence of an element essential to that party's case and with respect to which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986).

### A.

Scout would be obligated to prove at trial that the actions of the rehabilitation

center, Morris, and Roberts were taken pursuant to "color of state law." 42 U.S.C. § 1983. *See, e.g., Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit* Instruction No. 4.03, at 51 (1993) (West ed.).

As Chief Justice Burger has written for the majority of the United States Supreme Court, the "ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: Is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982)). I do not believe the alleged infringement of federal rights in this case—which can be characterized as a malpractice claim—is fairly attributable to state actors acting under color of state law. *See Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (holding that respondents failed to establish state action in nursing home's decision to discharge or transfer Medicaid patients to lower levels of care, specifically finding that: (a) the mere fact that a private business is subject to state regulation does not convert its actions into the actions of the state; and (b) medical judgments made by private parties according to professional standards that are not established by the state do not constitute state action even where the state licensed the facilities and subsidizes the cost of the facilities).

It is not possible to distinguish this case from *Blum.* In this case, as in *Blum,* the matter in dispute concerns medical judgments by private parties. There is nothing in the evidence to suggest that either the State of Nebraska or the City of Gordon played a part in deciding how or under what circumstances medical treatment in the form of alcohol detoxification treatment would be administered by the rehabilitation center. While it is true that the state was authorized by contract to inspect "all clinical, physical and programmatic records," there is no evidence that the State of Nebraska (or the City of Gordon) prescribed in what manner alcohol abuse treatment was administered. As in *Blum,* how and under what circumstances medical care would be administered was left to the private provider.

Scout raises two points which merit brief comment. Scout argues that providing alcohol abuse treatment is essentially a state function and that there was a "symbiotic" relationship between the City of Gordon and the rehabilitation center. I am not persuaded by either argument.

There is no evidence whatsoever that the State of Nebraska or the City of Gordon historically considered the provision of alcohol rehabilitation services as an exclusive prerogative of government. Thus, there is no fair basis for suggesting that the rehabilitation center was a proxy for either the State of Nebraska or the City of Gordon.

Moreover, the claim that there was some sort of "symbiotic" relationship between the City of Gordon and the rehabilitation center misses the mark. While it is true that the City of Gordon utilized the services of the rehabilitation center, this is in reality no different from the city using the facilities of a hospital, for example. In that sense, the city and the rehabilitation center are no more dependent upon each other than a private patient seeking substance abuse treatment from a private hospital.

In summary, the critical question is whether the medical (alcohol abuse) treatment, or lack thereof, Scout received at the rehabilitation center was "fairly attributable to the State." There being no evidence that the state controlled how and in what manner the alcohol abuse treatment provided by the rehabilitation center would be administered, the required "under-color-of-state-law" element of Scout's section 1983 claim has not, and evidently cannot, be shown.

### B.

Scout claims the rehabilitation center, Morris, and Roberts denied him equal protection of the law by treating him differently because he was a Native American. However, the evidence is undisputed that Scout has no facts to support his claim.

For example, interrogatory 14 asked Scout the following question: "Please specifically state how defendant Sheridan County Rehabilitation Center treated you differently than other persons taken to the Center prior to December 31, 1988." (Filing 56, Harder Aff. Attach. A.) Scout answered, "It is impossible to determine how other persons were treated at the center prior to December 31, 1988, because the records have been lost or destroyed. However, either everyone was grossly mistreated, or the plaintiff was treated differently." (*Id.*)

Scout depends entirely upon a spoliation-of-evidence inference. In other words, Scout contends that because records from the rehabilitation center are no longer available, one must infer that had the records been produced they would have supported his claim. Scout is wrong.

■■ A spoliation inference or presumption may arise where it is shown that the destruction of evidence was: (a) intentional, (b) fraudulent, or (c) done with a desire to conceal and, thus, frustrate the search for the truth. *See, e.g., SDI Operating Partnership, L.P. v. Neuwirth,* 973 F.2d 652, 655 (8th Cir.1992). Generally speaking, there is no unfavorable inference when the circumstances indicate that a document or article has been lost or accidentally destroyed or where the failure to produce it is otherwise properly accounted for. *See, e.g., Lewy v. Remington Arms Co.,* 836 F.2d 1104, 1112 (8th Cir.1988) (quoting *Gumbs v. International Harvester Inc.,* 718 F.2d 88, 96 (3rd Cir.1983)).

■ In this case, there is absolutely no evidence that the records of the rehabilitation center were intentionally destroyed, fraudulently misplaced, or otherwise secreted by the defendants, or in any other way handled in such a manner as to conceal the facts and thus frustrate the search for the truth. The undisputed facts are that when the nonprofit corporation ceased doing business because of lack of funding, its files were placed in file cabinets, properly banded, delivered to the City of Gordon, and stored in the county courthouse. Sometime later, someone else destroyed the files. Under these circumstances, there is simply no basis for drawing an adverse inference against the defendants.

In summary, since there is no evidence that the defendants discriminated against Scout because he was a Native American, the motion for summary judgment must be granted.

## C.

Finally, the motion for summary judgment must be granted for a third reason. It is undisputed in the evidence that neither the rehabilitation center nor the other individual defendants played any part in failing to see to the treatment of Scout. If Scout was not properly treated, it was because employees of the rehabilitation center subordinate to Morris and Roberts failed in their duties.

■ If Scout wishes to prevail against the rehabilitation center, Morris, and Roberts, he must establish "supervisory liability." In order to have a submissible case of supervisory liability, a plaintiff must show that the supervisory defendant or defendants: (1) had notice of a continuing, widespread, persistent pattern of unconstitutional acts being committed by employees under their supervision and control, (2) demonstrated deliberate indifference or tacit authorization of such acts after notice, (3) failed to take sufficient remedial action which a reasonable person would have taken, and (4) caused the plaintiff's injuries by their failure to act. *See, e.g., Jane Doe A. v. Special Sch. Dist.,* 901 F.2d 642, 645 (8th Cir.1990); *Klinger v. Nebraska Dep't of Correctional Servs.,* 824 F.Supp. 1374, 1445 & n. 137 (D.Neb.1993).

■ Once again, Scout endeavors to meet his burden of proof by relying exclusively on a spoliation-of-evidence inference or presumption arising from the defendants' failure to retain records. For example, interrogatory 5 asked Scout to state the basis for his allegations that the challenged policies were maintained negligently, grossly negligently, with reckless disregard for the safety of others, and with deliberate indifference to his rights. Scout responded in part:

The plaintiff cannot specifically show the Sheridan County Alcohol Rehabilitation Center, its agents or employees conduct, in

this case, because the records of the Center have been lost or destroyed.

However, the plaintiff is not aware that the Sheridan County Alcohol Rehabilitation Center, its directors, agents, or employees did anything to insure that proper policies were promulgated, to train staff, or to supervise staff, when it was its obligation to do so.

(Filing 56, Harder Aff. Attach. A.)

Once again, there is simply no basis for invoking a spoliation-of-evidence inference or presumption in this case. Without such an inference or presumption, there is no basis for Scout's claim that the rehabilitation center, Morris, and Roberts somehow deprived him of his constitutional rights by failing to perform their supervisory duties.

### III.

In summary, I find there are three separate and distinct reasons for granting the motion for summary judgment in this case. First, there is a complete absence of any showing that the conduct complained of was "under color of state law." Second, there is no evidence that these defendants discriminated against Scout because of his Native American heritage. Third, there is no evidence that these defendants, as supervisors, demonstrated deliberate indifference or tacit authorization of the allegedly unconstitutional acts complained of. Accordingly,

IT IS ORDERED that:

(1) The motion for summary judgment filed by defendants Sheridan County Alcohol Rehabilitation Center, Tom Morris, and John Roberts (Filing 53) is granted, providing that Scout shall take nothing on his federal claims against these defendants, with the court declining to exercise jurisdiction on pendent state-law claims; [1]

(2) The motion for summary judgment filed by defendant Tom Morris (Filing 97)

---

1. Scout requests that I "remand" the pendent state-law claims. Since this case did not originate by removal, there is no basis for a remand.

concerning the pendent state-law claim is denied as moot.