**Marvin LUMBER and Cedar Company and Marvin Windows of Tennessee, Inc., Plaintiffs,**

v.

**PPG INDUSTRIES, INC., Defendant and Third–Party Plaintiff,**

v.

**ELF ATOCHEM NORTH AMERICA, INC., a Pennsylvania Corporation, Third–Party Defendant.**

Civ. No. 4–95–739.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 16, 1996.

Donald James Brown and Thomas H. Boyd, St. Paul, MN, for Plaintiffs.

Michael T. Nilan and Elizabeth Johnson Heying, Minneapolis, MN, for Defendant.

William R. Stoeri, Minneapolis, MN, for Third–Party Defendant.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

■ This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Plaintiffs' and the Defendant's Cross–Motions to Compel the production of documents that each party has claimed to be legally privileged.[1]

A Hearing on the Motions was conducted on August 8, 1996, at which time the Plaintiffs appeared by Donald James Brown and Thomas H. Boyd, Esqs.; the Defendant appeared by Michael T. Nilan and Elizabeth Johnson Heying, Esqs.; and the Third–Party Defendant appeared by William R. Stoeri, Esq.

For reasons which follow, we grant the Motions of the Plaintiffs and of the Defendants.

### II. *Discussion*

On April 22, 1994, the Plaintiffs commenced this action in order to recover certain losses that they have allegedly sustained by the use of wood preservatives and primers that were purchased from the Defendant. Specifically, the Plaintiffs claim that the "wood components of [its] windows and doors treated with [the Defendant's] preservatives, primers and/or coatings are rotting, deteriorating and/or otherwise degrading." *First Amended Complaint* at ¶ 19.

The Plaintiffs assert that, in the middle to latter part of 1990, they began receiving complaints from their customers that the wood in the Plaintiff's products were deteriorating. Purportedly, some of these complaints were accompanied with threats of litigation. In response, the Plaintiffs contacted outside legal counsel, who directed the Plaintiffs to conduct an investigation into the problem. The Plaintiffs maintain that an investigation, under the supervision of their counsel, ensued.

On June 22, 1993, the Plaintiffs informed the Defendant that they were experiencing a substantial increase in wood rot complaints, for the products that were manufactured between 1985 and 1990, which was the period during which they purchased and utilized a specific wood preservative, that was marketed by the Defendant and denominated as "PILT." On September 24, 1993, after consulting with its in-house legal department, the Defendant prepared a formal response to

---

1. In addition, the Plaintiffs have moved to compel the Defendant to produce certain research reports, to provide responses to specific Interrogatories and document requests, and to provide a further itemization of the documents that are responsive to certain of its discovery requests. For reasons expressed at the time of the Hearing, we grant the Plaintiffs' Motion to Compel the production of those Bi–Monthly Reports, that the Defendant has prepared after January of 1991. In this respect, we are not persuaded by the Defendant's relevance objection.

With respect to the Plaintiffs' remaining requests, we conclude that the parties are in the best position to determine the least expensive, and the most expeditious manner in which the further itemization of their respective discovery responses may be accomplished. Accordingly, we direct the Plaintiffs and the Defendant to "meet and confer," by no later than August 22, 1996, in order to achieve a mutually acceptable accommodation.

Further, we advised the parties that, of necessity, the Court must accept, at face value, a party's representation that it has fully produced all materials that are responsive to a specific discovery request. As we stated at the Hearing, we have no means to test the veracity of such avowals, other than to appropriately sanction a recalcitrant party for failing to responsibly honor its discovery obligations. In our view, the failure to produce evidence, without just cause, which is relevant within the context of Rule 26, Federal Rules of Civil Procedure, bears a close relationship to the "spoliation of evidence," and should be sanctioned accordingly. See, *Sylla–Sawdon v. Uniroyal Goodrich Tire Company,* 47 F.3d 277, 280 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 84, 133 L.Ed.2d 42 (1995); *Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263, 267 (8th Cir.1993); *SDI Operating Partnership, L.P. v. Neuwirth,* 973 F.2d 652, 655 (8th Cir.1992); *Scout v. City of Gordon,* 849 F.Supp. 687, 690–91 (D.Neb.1994); *Capellupo v. FMC Corp.,* 126 F.R.D. 545, 551 (D.Minn.1989); cf., *Baker v. General Motors Corp.,* 86 F.3d 811, 817 (8th Cir.1996). In the language of Cervantes, "a word to the wise is enough." *Don Quixote,* Part II, Book IV, Chapter 37, at page 692.

the Plaintiff's notice of claim, in which it proposed to resolve the matter but without admitting liability. Essentially, the parties seek to discover the results of each others' investigation into the cause of the deterioration problem, while simultaneously maintaining that the results of its own investigations are privileged.

■■■ A. *Standard of Review.* The parties' claims of privilege arise from two separate and distinct doctrines. "The first"— known as the attorney-client privilege—"is the long established rule that confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client." *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 601 (8th Cir.1977). The second rule— referred to as the "work product" doctrine— extends a qualified privilege to information and materials that have been assembled by or for a person in anticipation of litigation or in preparation for trial.

■■■ 1. *The Attorney–Client Privilege.* Since the Plaintiffs' cause of action is predicated on our diversity jurisdiction, we examine the parties' reliance upon an attorney-client privilege under the laws of the State of Minnesota. *Rule 501, Federal Rules of Evidence; Simon v. G.D. Searle & Co.,* 816 F.2d 397, 402 (8th Cir.1987), cert. denied, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987); *Bituminous Casualty Corp. v. Tonka Corp.,* 140 F.R.D. 381, 386 (D.Minn.1992). Under Minnesota law:

> An attorney cannot, without the consent of the attorney's client, be examined as to any communication made by the client to the attorney or the attorney's advice given thereon in the course of professional duty; nor can any employee of the attorney be examined as to the communication or advice, without the client's consent.

*Minnesota Statutes Section 595.02(1)(b).*

In determining whether material is privileged under this rule, the Minnesota Courts consider two factors. First, the information sought must be contained within a confidential communication between the client and the client's attorney and, second, the communication must have been made for the purpose of securing legal advice. See, *Brown v. St. Paul City R.R. Co.,* 241 Minn. 15, 34, 62 N.W.2d 688 (1954); *Bituminous Casualty Corp. v. Tonka Corp.,* supra. Notably, the party asserting the privilege must demonstrate that each of these elements have been satisfied, *Brown v. St. Paul City R.R. Co.,* supra at 35, 62 N.W.2d 688; *Sprader v. Mueller,* 265 Minn. 111, 117, 121 N.W.2d 176 (1963); *Bituminous Casualty Corp. v. Tonka Corp.,* supra; *United States v. Bonnell,* 483 F.Supp. 1070, 1076 (D.Minn.1979) and, since the privilege operates to exclude potentially truthful evidence, it must be narrowly construed. *Sprader v. Mueller,* supra; *Bituminous Casualty Corp. v. Tonka Corp.,* supra.

■■■ 2. *The Work Product Doctrine.* The work product doctrine is codified in Rule 26(b)(3), Federal Rules of Civil Procedure, which provides, in pertinent part, as follows:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable * * * and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative * * * only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

As the language of the Rule, and of subsequent case law makes clear, so long as the information was prepared in "anticipation of litigation," the privilege which attaches to "ordinary" or "fact work product" may be defeated by an appropriate showing, on the part of the discovering party, of "substantial need" and of "undue hardship." *Petersen v. Douglas County Bank & Trust Co.,* 967 F.2d 1186, 1189 (8th Cir.1992).

■■■ Unlike "ordinary" or "fact work product," however, "opinion work product en-

joys a very nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Chrysler Motors Corp. Overnight Evaluation,* 860 F.2d 844, 846 (8th Cir.1988), quoting *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977). As a consequence, "[t]he work-product doctrine not only protects from discovery materials obtained or prepared in anticipation of litigation, but also the attorney's mental impressions, including thought processes, opinions, conclusions, and legal theories." *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1328 (8th Cir.1986).

 In determining the applicability of this privilege, our analysis, of necessity, turns on an assessment of whether the materials at issue were prepared in anticipation of litigation. In our Circuit, such an assessment is fact-driven. *Banks v. Wilson,* 151 F.R.D. 109, 112 (D.Minn.1993). In the words of the Court:

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Simon v. G.D. Searle & Co.,* supra at 401.

Where the work product of the attorneys is intertwined between prospective litigation and non-litigation business purposes, the work product doctrine should properly attach. See, *Diversified Industries, Inc. v. Meredith,* supra at 610.

 "The work-product immunity is not lost, however, if the document was not prepared in anticipation of the present litigation so long as it was prepared in anticipation of some litigation by a party to the present litigation." *Western Trails, Inc. v. Camp Coast to Coast, Inc.,* 139 F.R.D. 4, 9 (D.D.C. 1991), citing *Eckert v. Fitzgerald,* 119 F.R.D. 297, 299 (D.D.C.1988) ("The literal language of [Rule 26(b)(3) ] protects material prepared by or for any litigation or trial so long as it was prepared by or for a party to the subsequent litigation."); *Bituminous Cas. Corp. v. Tonka Corp.,* supra at 388 (D.Minn.1992). As the Court noted in *In re Murphy,* supra at 334, "[t]he work product privilege would be attenuated if it were limited to documents that were prepared in the case for which discovery is sought."

B. *Legal Analysis.* The Defendant contends that, although this action was commenced more than two years ago, it remains unable to obtain those documents and information pertaining to the Plaintiffs' investigation of the cause of the wood deterioration of which the Plaintiffs have complained. In response, the Plaintiffs maintain that they have produced all of the information that has been generated in the ordinary course of their business.[2] As we expressed at the Hearing, the parties do not appear to markedly differ in their understanding of the laws of privilege, expressed within this Circuit. We, therefore, advised the parties that, consistent with the well-settled principles of privilege, each is entitled to the facts underlying each others' investigations but are not entitled to a party's communications with its

---

**2.** The Plaintiffs have also urged that we order the Defendant to produce certain documents which they believe are not privileged, based upon the descriptions contained in the Defendant's Privilege Log. As but one example, the Plaintiffs argue that documents, as to which counsel are neither listed as the author, nor as the recipient, cannot be privileged as a matter of law. Absent an *in camera* review, however, the Court cannot adequately determine the existence of a viable privilege. Where, as here, an objection to an asserted privilege is premised upon the sometimes unavoidably cryptic nature of a description in a Privilege Log, the Court believes it preferable to require the parties to exhaust, somewhat toilsomely, their "meet and confer" obligations, so as to stave a needless resort to Court intervention. Our conclusion in this respect is supported by the Defendant's representation, at the Hearing, that it will produce the non-privileged documentation which pertains to the facts that underlie its investigation of the alleged deterioration problem, so long as the Plaintiffs respond reciprocally. We reiterate our direction, given at the time of the Hearing, that the parties attempt to amicably resolve their differences prior to the conduct of any *in camera* review by the Court.

attorney.[3]

■■ The parties' principal dispute centers upon the role that was played by legal counsel in the Plaintiffs' investigation of the wood rot problem. In this regard, we find the reasoning of the Court, in *Mission Nat'l. Ins. Co. v. Lilly,* 112 F.R.D. 160 (D.Minn. 1986), to be persuasive. There, an insurer sued its insured for a determination of liability and, after the insured had submitted a policy claim, the insurer retained a law firm to conduct and oversee an investigation of the insured's claim. Despite the fact that counsel performed that investigation, the Court rejected the insurer's claim of "work product" protection, by reasoning that the mere involvement of an attorney, in the ordinary business activities of a party, cannot legitimately shield those activities from discovery. Under such circumstances, the Court felt that it would be distinctly unfair to allow the insurer's decision, to subcontract its decisionmaking to a third-party law firm, "to create a blanket obstruction to discovery of its claims investigation." *Id.* at 163. We think the very same may be said here and, as a consequence, the Plaintiffs may not shield their investigation of the cause of the alleged wood rot merely because they elected to delegate their ordinary business obligations to legal counsel.

■■ Rather than distinguish the Court's holding in *Mission,* counsel for the Plaintiffs had advised that the Defendant has simply asked the "wrong questions." Specifically, the Plaintiffs contend that the Defendant's inquiries have been wholly restricted to exploring which was communicated by the Plaintiffs to their legal counsel or *vice versa.* Of course, under the rule expressed in *In re Bieter Co.,* 16 F.3d 929, 940–41 (8th Cir. 1994), such communications are privileged

even though the facts, that are contained in the communications, are not. Further, while historical facts are not privileged, when those facts are collated or categorized by legal counsel they may well be entitled to protection from disclosure under the work product doctrine. See, e.g., *Shelton v. American Motors Corp.,* supra at 1326 (selective review of numerous documents reflects counsel's legal theories and thought processes, which are protected as work product). Nevertheless, as our Court of Appeals has repeatedly recognized, "[d]ocuments are not privileged under the work product doctrine * * * merely because the other party transferred them to their attorney, litigation department, or insurer." *Petersen v. Douglas County Bank & Trust Co.,* supra at 1189, citing *Shelton v. American Motors Corp.,* supra. Therefore, while the Plaintiffs may lawfully assert a privilege as to a chart or other compilation of facts, that was specifically generated to respond to a specific request from legal counsel, the Plaintiffs may not generally assert a blanket privilege as to those facts that were generated by its investigation merely because those facts were subsequently incorporated into a communication to counsel.

Given these principles, we direct the Plaintiffs to respond to the Defendant's Rule 30(b)(6) notice of deposition, consistent with the principles addressed in this Memorandum Order. In the event that the discovery responses still evade an amicable resolution, notwithstanding the guidance we here provide, the parties are at liberty to reapproach the Court for further direction.

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiffs' and the Defendant's Cross–Motions to Compel [Docket No. 121 and 124] are GRANTED, and the Plain-

---

**3.** The distinction is significant. As the Court expressed the matter, in *In re Bieter Co.,* 16 F.3d 929, 940–41 (8th Cir.1994):

> The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney: "[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be

compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."

Quoting *Upjohn Co. v. United States,* 449 U.S. 383, 395–96, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584 (1981), quoting, in turn, *City of Philadelphia v. Westinghouse Elec. Corp.,* 205 F.Supp. 830, 831 (E.D.Pa.1962) [Emphasis in original].

tiffs and the Defendant shall disclose, consistent with the rulings contained in this Memorandum Order, the facts underlying each party's investigation into the cause of the alleged wood deterioration and, in addition, the Defendant shall produce its post–1990 Bi–Monthly Reports.

2. That, as to those requests that remain unresolved, the parties are directed to "meet and confer" and, absent an amicable resolution of their differences, the parties are directed to submit any remaining disputes for the Court's resolution.