**In re GRAND CASINOS, INC.,**
**Securities Litigation,**

**This Document Relates To: All Actions**

**No. 4–96–890 (JRT/RLE).**

United States District Court,
D. Minnesota.

May 22, 1998.

## MEMORANDUM ORDER

ERICKSON, Magistrate Judge.

At Duluth, in the District of Minnesota, this 22nd day of May, 1998.

### I. *Introduction*

On April 23, 1998, the Court heard argument on the Defendants' Motion to Compel Discovery, and for Attorneys' Fees and Expenses. At the Hearing on the Motion, the Plaintiffs appeared by Renae D. Steiner, Esq., and the Defendants appeared by Michael E. Keyes, Esq.

For reasons which follow, the Motion to Compel is granted in part, and denied in part, and the Motion for Fees and Costs is denied.

### II. *Discussion*

This private class action arises out of an investment by the Defendant Grand Casinos, Inc. ("Grand"), in a construction project, which is located in Las Vegas, Nevada, and which was known as "Stratosphere." Stratosphere was originally envisioned as a premier entertainment complex, which would feature a casino, a luxury hotel, and the largest observation tower in the City of Las Vegas.

The complex, however, was plagued with construction cost overruns and, in the several months after Stratosphere opened for business in April of 1996, it suffered substantial financial losses. Ultimately, on January 27, 1997, Stratosphere filed for bankruptcy and, in due course, Stratosphere's difficulties adversely affected the performance of Grand's stock, which suffered an appreciable decline in value. The Plaintiffs then commenced this action, in which they allege that Grand, and several of its officers, issued false and misleading statements concerning the fiscal health and the financial prospects of Grand, and that these assertedly false and misleading statements were made in violation of the Federal securities laws. See, *In re Grand Casinos, Inc., Securities Litigation*, 988 F.Supp. 1273, 1275–77 (D.Minn.1997).

With this generalized backdrop, we address the issues raised by the Defendants' Motion to Compel Discovery.[1]

1. *The Permissible Time Parameters for the Plaintiffs' Responses to the Defendants' Document Request Nos. 9–19.*

 ██ In these document Requests, the Defendants seek the production of a variety of documents which contain evidence concerning the Plaintiffs' trading activities in Grand, and in Stratosphere stock. The parties disagree as to the proper time frame for this requested discovery. The Defendants re-

---

1. At the threshold of our discussion, we briefly summarize those aspects of the Defendants' Motion, which have either been informally resolved, or for which no extended analysis is required. First, we deny, as moot, the Defendants' Motion to compel a further response to their Document Request No. 8, since the Plaintiffs have represented that this particular dispute has been informally resolved. Second, the Defendants have requested a supplementation of the Plaintiff Robert Friedland's ("Friedland's") response to the Defendants' Interrogatory No. 8, which requested the identification of certain communications. Since Friedland represents that he has already identified each of the pertinent communications, we deny this aspect of the Defendants' Motion, as moot. See, *Lumber v. PPG Industries, Inc.*, 168 F.R.D. 641, 643 n. 1 (D.Minn.1996). Third, we remand to the parties, for a further "meet and confer," any outstanding issues which relate to the Plaintiffs' assertion of privileged protection for documents which are responsive to the Defendants' Document Request No. 26 and, in resolving any such issues, we commend to the parties the procedure which we briefly described at the close of the Hearing. If, after a further meet and confer, the issues remain unresolved, then the parties are free to promptly present them for our summary resolution.

Lastly, we are asked to resolve a dispute concerning the Plaintiffs' responses to the Defendants' Document Request Nos. 23 and 35 through 36, which sought the production of materials that relate to any other Federal or State securities lawsuits, or proceedings, in which the Lead Plaintiffs appeared as a party, a litigant or a class representative. As we understand the Plaintiffs' position, they represent that there are no responsive documents in their possession, which are in the form of deposition transcripts or transcripts of testimony. However, the Plaintiffs' Opposition Memorandum leaves unstated whether they possess other documents which are responsive to these requests. In the absence of any other objection to these Requests, copies of any responsive documents, which are in the Plaintiffs' possession, should be produced to the Defendants forthwith.

quest that the Plaintiffs be directed to produce responsive materials which were generated during a period beginning on January 1, 1994, and continuing to the present.[2] For their part, the Plaintiffs have offered to produce responsive materials for a period beginning one year prior to the commencement of the class period, and continuing until ninety days after the close of this period—which would result in a discovery period beginning on December 19, 1994, and continuing through October 20, 1996.

We agree with the Plaintiffs that their proposed time frame is most appropriate. Notably, the cases cited by the Defendants, as supporting a broader period of discovery, involved discovery that was targeted at defendants in private security actions, rather than requests which were directed at plaintiffs. See, *In re Control Data Corporation Securities Litigation,* 1988 WL 92085 *3 (D.Minn., February 22, 1998); *In re Seagate Technology II Securities Litigation,* 1993 WL 293008 *2 (N.D.Cal., June 10, 1993). Of course, such disparate treatment is justifiable where, as here, the Defendants' asserted fraudulent conduct predated the Plaintiffs' alleged reliance on the purported fraud. As a consequence, we do not agree with the Defendants, that the time frame for the Plaintiffs' responses to Document Request Nos. 9 through 19, must be coextensive with the temporal parameters of the Plaintiffs' Document Requests.

Therefore, we direct the Plaintiffs to produce documents, which are responsive to the Defendants Requests for Production nos. 9–19, and which were generated during a period beginning on December 19, 1994, and continuing through October 20, 1996.

2. *The Plaintiffs' Objection to the Defendants' Interrogatory No. 3.*

 The Defendants' Interrogatory No. 3 reads as follows:

Identify each person known or believed by you to have personal knowledge of any facts at issue or involved in the captioned lawsuit or any of the events underlying the allegations in the Consolidated Amended Class Action Complaint, Answer or any other pleading, and for each separately state the facts and observations within each person's knowledge.

The Plaintiff has objected to this Interrogatory, on the ground that it is a "premature contention interrogatory." We disagree.

In our considered view, the Defendants' third Interrogatory is not a "contention interrogatory" at all but, instead, is a permissible fact interrogatory, which is calculated to discover information—namely the identification of witnesses—which is plainly discoverable even if raised in the preliminary stages of discovery. Indeed, our independent research reveals that this is the prevailing view of those Courts which have considered the issue. In the words of one such Court:

The term "contention interrogatories" refers to several types of questions. They may ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts. *They are distinct from interrogatories that request identification of witnesses or documents that bear on the allegations.*

*McCarthy v. Paine Webber Group, Inc.,* 168 F.R.D. 448, 450 (D.Conn.1996) [emphasis added]; see also, *Everett v. USAir Group, Inc.,* 165 F.R.D. 1, 3 (D.D.C.1995) ("Insofar as Interrogatory Nos. 7, 8, and 10 request the identification of documents or witnesses, they are not contention interrogatories.") *B. Braun Medical Inc. v. Abbott Laboratories,* 155 F.R.D. 525, (E.D.Pa.1994) (same); *Fischer and Porter Co. v. Tolson,* 143 F.R.D. 93, 95 (E.D.Pa.1992).

Moreover, the "non-contentious" nature of the Interrogatory is confirmed by the fact that it is largely duplicative of the disclosure obligations of Rule 26(a)(1)(A), Federal Rules of Civil Procedure, which require a party to initially disclose the identity of "each individual likely to have discoverable information

---

**2.** We are informed that this proposed discovery period corresponds with the time frames imposed by the Plaintiffs' own Document Requests.

relevant to disputed facts alleged with particularity in the pleadings ***."

Accordingly, the Plaintiffs' objection to the Defendants' Interrogatory No. 3 is overruled, and we direct the Plaintiffs to fully respond to this Interrogatory forthwith.

3. *The Defendants' Attempted Discovery into the Plaintiffs' Investment Histories.*

■ In their Document Request Nos. 20 through 22, and in their seventh Interrogatory, the Defendants have sought to discover information pertaining to the general investment histories of the five named Lead Plaintiffs in this action. Similarly, the Defendants seek documents and information which pertain to the Plaintiffs' investment history in Grand.[3] In opposing these discovery requests, the Plaintiffs have primarily urged that their investment histories and strategies are not relevant to the issues which have been framed by the parties' pleadings. We disagree.

■ In the Consolidated Amended Class Action Complaint, the Plaintiffs have relied upon the "fraud on the market" theory, which is a means whereby proof of direct causal reliance, upon the asserted fraud, may be dispensed with in private securities actions. In *Basic, Inc. v. Levinson*, 485 U.S. 224, 250, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), the Supreme Court endorsed the use of the "fraud on the market" theory to create a rebuttable presumption of an investor's reliance on materially misleading statements. The fraud on the market theory presupposes that an investor relies on the integrity of the price of the stock, as that price is determined by market forces. *Id.* at 241–42, 108 S.Ct. 978. As the Court explained:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. *** Misleading statements will therefore defraud purchasers of stock even if the purchasers

do not directly rely on the misstatements. *** The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Id.,* quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3rd Cir.1986).

As the Court further explained, "[i]n an open and developed market, the dissemination of material misrepresentations or withholding of material information typically affects the price of the stock, and purchasers generally rely on the price of the stock as a reflection of its value." *Id.* at 244, 108 S.Ct. 978.

■ Nevertheless, the presumption of reliance upon the market's integrity may be rebutted by "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price ***." *Id.* at 248, 108 S.Ct. 978. Here, in seeking discovery as to the Lead Plaintiffs' investment histories, and investment strategies, the Defendants emphasize the following two commonly cited method of rebutting the presumption of reliance:

> 1. by disproving materiality or by proving that, despite materiality, an insufficient number of traders relied to inflate the price; or
>
> 2. by proving that an individual plaintiff purchased despite knowledge of the falsity of a representation, or that he would have, had he known of it.

*Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir.1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); see also, *In re SciMed Life Securities Litigation,* 1992 WL 413867 *3 (D.Minn., November 20, 1992); *Roseman v. Sports and Recreation,* 165 F.R.D. 108, 111 (M.D.Fla.1996); *Dingler v. T.J. Raney & Sons, Inc.,* 708 F.Supp. 1044, 1048 (W.D.Ark.1989); *In re McDonnell Douglas Corp. Securities Litigation,* 587 F.Supp. 625, 629 (E.D.Mo.1983).

In particular, the Defendants stress the second of these factors, and they argue that the challenged Document Requests are reason-

---

**3.** The Plaintiffs' Grand investment histories are the subject of the Defendants' Requests for Production No. 12 and 17 through 18, together with their Interrogatory No. 6.

ably calculated to lead to the discovery of admissible evidence, in that the information, which may be gleaned from the Lead Plaintiffs' recent investment portfolios, and related materials, could evince that one or more of them were sophisticated investors, who either purchased, or might have purchased, Grand and Stratosphere securities, notwithstanding their foreknowledge of the purported falsity of the Defendants' alleged misrepresentations.[4]

If such circumstances were found to obtain, then, the Defendants maintain, that the proposed discovery into the Lead Plaintiffs' investment histories would serve a two-fold purpose: first, in rebutting the presumption that the Lead Plaintiff, or Plaintiffs, relied upon the integrity of the market; and second, in demonstrating that one or more of the Lead Plaintiffs was subject to unique defenses, which would render them "atypical" within the meaning of Rule 23(a), Federal Rules of Civil Procedure. Of course, such a showing could jeopardize that Plaintiff's capacity to adequately represent the class of claimants in this case. See, *Roseman v. Sports and Recreation,* supra at 111; *In re Harcourt Brace Jovanovich, Inc. Securities Litigation,* 838 F.Supp. 109, 113–14 (S.D.N.Y.1993); *In re ML–Lee Acquisition Fund II, L.P. and ML–Lee Acquisition Fund (Retirement Accounts) II, L.P. Securities Litigation,* 149 F.R.D. 506, 508 (D.Del. 1993); cf., *In re SciMed Life Securities Litigation,* supra at 1992 WL 413867 *2–3 (plaintiffs' investment histories and backgrounds found to be relevant as to reliance on market integrity, but were not a relevant factor in "typicality" analysis).

Responding to these arguments, the Plaintiffs highlight the decisions of those Courts—including our own—which have rejected the proposition that an investor's degree of so-phistication exposes him to unique defenses which could preclude a finding of typicality for class representation purposes. See, *In re SciMed Life Securities Litigation,* supra at 1992 WL 413867 *2; *In re Control Data Corporation Securities Litigation,* 116 F.R.D. 216, 221 (D.Minn.1986); *Chutich v. Green Tree Acceptance, Inc.,* Civil No. 3–88–869, Order at 5–6 (D.Minn., August 31, 1989); *Burstein v. Applied Extrusion Technologies, Inc.,* 153 F.R.D. 488, 489–91 (D.Mass.1994); *Steiner v. Ideal Basic Industries, Inc.,* 127 F.R.D. 192, 194 (D.Colo.1987). While we hold some reservations as to the continued strength of these decisions, for our present purposes, we need not decide whether the Lead Plaintiffs' degree of sophistication, in making investment decisions, would subject them to atypical defenses.

In this action, discovery has not been bifurcated into separate phases relating to the issues of class certification, and to the substantive merits of the Plaintiffs' claims—rather, discovery is here proceeding as a unified whole. With regard to the merits of the Plaintiffs' claims, we are persuaded, by the Defendants' amply supported arguments, that the proposed discovery of the Lead Plaintiffs' investment histories and strategies could lead to the discovery of admissible evidence; namely, evidence which could serve to rebut any presumption that they relied upon the integrity of the market.

Indeed, for their part, the Plaintiffs have not cogently rebutted the Defendants' assertion that the proposed discovery could produce disclosures which might adequately overcome the presumption at issue, for they merely express confidence in the existence of more efficient means to rebut that presumption. While this may be a valid observation, we note that the Supreme Court has expressly declined to delimit the potential methods

---

4. The Defendants also suggest that the proposed discovery of the Lead Plaintiffs' investment histories could reveal that one or more of the Lead Plaintiffs traded in Grand and Stratosphere securities, while knowing that the alleged misrepresentations were false, in order to advance personal purposes which were unrelated to any claimed deception on the Defendants' part. If such a demonstration could be made, it could well serve to rebut the presumption of market reliance. See, *Basic Inc. v. Levinson,* 485 U.S.

224, 249, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) ("[A] plaintiff who believed that Basic's statement's were false and that Basic was indeed engaged in merger discussions, and who consequently believed that Basic stock was artificially underpriced, but sold his shares nevertheless because of other unrelated concerns, e.g., potential antitrust problems, or political pressures to divest from certain businesses, could not be said to have relied on the integrity of a price he knew had been manipulated .").

of rebutting the fraud on the market presumption but, rather, has stated that it may be rebutted by "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price ***." *Basic, Inc. v. Levinson,* supra at 248, 108 S.Ct. 978.

■ As alternative arguments, the Plaintiffs object to the proposed discovery on the grounds of overbreadth, burdensomeness and privacy. With respect to the overbreadth and burdensomeness contentions, the Defendants' proposed discovery has targeted only the five Lead Plaintiffs in this action, and we are unpersuaded that the Defendants' requests are unduly burdensome or overbroad. Were we otherwise concerned, that concern is assuaged by our further conclusion that these discovery requests should be subject to the same time frame which we have previously identified as being appropriate for the Plaintiffs' responses to the Defendants' Document Request Nos. 9 through 19—that is, from December 19, 1994, through October 20, 1996.

■ The privacy concerns of the Lead Plaintiffs' do give us some pause, for the Defendants' Document Request No. 12 seeks documents which relate not only to the Lead Plaintiffs' dealings in Grand securities, but also to those of the Lead Plaintiffs' family members.[5] While we can appreciate the Defendants' interest in the Lead Plaintiffs' own trading activities, we conclude that they have failed to articulate a persuasive need for inquiring into the trading activities of the Lead Plaintiffs' family members, so long as those activities were without the involvement of a Lead Plaintiff. Furthermore, as the term "family members" is otherwise undefined, we believe that the requested discovery from these persons is subject to a legitimate challenge on the grounds of vagueness and overbreadth. Accordingly, while we grant the Defendants' Motion to compel an additional response to this Document Request, we modify the Request to be limited to a "family member" whose investment decisions are directly influenced by a Lead Plaintiff. In addition, as with the other discovery requests, which seek information and materials relating to the Lead Plaintiffs' investment strategies and investment histories, the Plaintiffs shall only be obligated to provide responses which are limited to the period beginning on December 19, 1994, and continuing through October 20, 1996.[6]

4. *The Plaintiffs' Work Product Objection to the Defendants' Document Request Nos. 3, 4 and 7.*

■ In three of their Document Requests, the Defendants seek the production of certain materials which have a bearing on the claims and allegations of the Plaintiffs' pleadings. The Plaintiffs have objected to these Requests on attorney work product grounds. As we understand the dispute, it is not so much focused on what is being sought by the challenged Requests but, rather, is fueled by the manner in which the Requests have been phrased.

In this respect, the challenged Requests read as follows:

*Request No. 3.*

All documents obtained by or furnished to you, or your attorneys or agents, by any person in the course of any investigation, research, or other communications undertaken in furtherance of your claims made in this action.

---

5. Document Request No. 12 seeks production of the following materials:

All documents that constitute, explain, describe, or in any way relate or pertain to the purchase, sale, exchange or holding of any Grand securities owned directly or beneficially by you, by any member or your family, or by any entity in which you have a direct or beneficial interest.

6. Since we grant, in part, the Defendants' Motion to compel additional responses to their Document Request Nos. 12, 17 through 18, and 20 through 22, as well as their Interrogatory Nos. 6 and 7, we deny their alternative request to compel further responses to their Document Request Nos. 24 through 25, which seek the production of the Lead Plaintiffs' tax returns and financial statements.

*Request No. 4.*

All documents used or consulted in drafting, discussion, considering, or revising your Complaint.

*Document Request No. 7.*

All documents that you contend substantiate any of the allegations of your Complaint.

The Plaintiffs contend that portions of these Requests, and particularly Request No. 4—which demands the disclosure of documents that were used in drafting, discussing, considering or revising the allegations of the Plaintiffs' Complaint—threatens the disclosure of the mental impressions and thought processes of the Plaintiffs' legal counsel.

■ Of course, in this Circuit it is axiomatic that, "while historical facts are not privileged, when those facts are collated or categorized by legal counsel they may well be entitled to protection from disclosure under the work product doctrine." *Lumber v. PPG Industries, Inc.,* 168 F.R.D. 641, 646 (D.Minn.1996), citing *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1326 (8th Cir. 1986). Indeed, in *Shelton,* the Court held that an attorney's selective review of numerous documents reflected her legal theories and thought processes, which were protected as work product. As a result, at her deposition, her attorney properly invoked the work product privilege, when she was asked to identify the particular documents which she had selectively gathered. *Shelton v. American Motors Corp.,* supra at 1326.

■ Nevertheless, it is equally undisputed that "[d]ocuments are not privileged under the work product doctrine *** merely because the other party transferred them to their attorney, litigation department, or insurer." *Petersen v. Douglas County Bank & Trust Co.,* 967 F.2d 1186, 1189 (8th Cir.1992), citing *Shelton v. American Motors Corp.,* supra at 1326. As a consequence, and as we related at the Hearing, while the Plaintiffs' counsel can perhaps shield, as work product,

some of the documents that are contained in their "research files," they may not shield, from legitimate discovery, the information which underlies the Plaintiffs' allegations and claims. As we have stated, in a similar context, "while the Plaintiffs may lawfully assert a privilege as to a chart or other compilation of facts, that was specifically generated to respond to a specific request from legal counsel, the Plaintiffs may not assert a blanket privilege as to those facts that were generated by its investigation merely because those facts were subsequently incorporated into a communication to counsel." *Lumber v. PPG Industries, Inc.,* supra at 646.

■ With these considerations in mind, we are sympathetic to the Plaintiffs' concern that, as phrased, the Defendants' Document Requests appear to intrude upon the thought processes, and the mental impressions, of their legal counsel. At the same time, however, we are mindful of the Defendants' suspicion that the Plaintiffs might be attempting to shield, from discovery, purely historical materials and information, by storing those materials in their counsel's litigation files. Therefore, to balance these competing interests, we direct the Plaintiffs to respond to the Defendants' Request Nos. 3, 4 and 7, by producing all documents in their possession, which concern matters of historical fact, and which either add or detract from the claims and allegations of the Plaintiffs' pleadings. In so doing, the Plaintiffs are not obliged to produce any document which properly reflects their counsel's thought processes or mental impressions.[7]

NOW, THEREFORE, It is—

ORDERED:

That the Defendants' Motion to Compel Discovery [Docket No. 36] is GRANTED in part, and DENIED in part, as is explained in the text of this Order, and the Defendants' request for attorneys' fees and costs is DENIED.

---

**7.** Lastly, we deny the Defendants' request for an award of the costs which were attendant to bringing this Motion, since, in our view, the Plaintiffs' opposition to the Motion was undertaken in good faith, and with "substantial justification." See, *Rule 37(a)(4)(A), Federal Rules of Civil Procedure.*