**Michael F. ONWUKA, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION, a foreign corporation, and Harold Gray, individually and as an employee of Federal Express Corporation, Defendants.**

**No. Civ. 4–96–516 (JRT/RLE).**

United States District Court,
D. Minnesota.

Nov. 24, 1997.

---

Stephen Fiebiger, Minneapolis, MN, for Plaintiff.

Richard Beens, Minneapolis, MN, for Defendant.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Plaintiff's Motion to Compel Discovery. See *Rule 37, Federal Rules of Civil Procedure.*

A Hearing on the Motion was conducted on August 7, 1997, at which time the Plaintiff appeared by Stephen Fiebiger, Esq., and the Defendants appeared by Richard Beens, Esq.

For reasons which follow, we grant the Plaintiff's Motion to Compel, in part.

### II. *Factual and Procedural Background*

The Plaintiff has commenced this action pursuant to Title VII, *Title 42 U.S.C. § 2000e et seq.;* Title 42 U.S.C. § 1983; the Minnesota Human Rights Act, *Minnesota Statutes Section 363.01 et seq.;* and certain

other State statutory and common law bases, claiming that the Defendants discriminated against him, in the course of his employment, on the basis of race and national origin and, thereafter, retaliated against him for exercising his statutory rights in filing a discrimination claim. The allegations arise from a series of incidents, which occurred at the Defendant Federal Express's ("Federal Express's") Saint Paul facility during the period from 1994 to 1995. The Plaintiff, who is a black Nigerian, served as an employment manager at Federal Express's Saint Paul facility until his employment there was terminated on July 7, 1995. As pertinent to the parties' discovery dispute, we briefly summarize the operative facts.

According to the Plaintiff, on June 22, 1995, the Defendant Harold Gray ("Gray"), who serves as a Senior Manager for Federal Express, acted with violence and intimidation while supervising the Plaintiff. On that same day, Federal Express suspended the Plaintiff, with pay, for alleged insubordination, which assertedly violated of the company's "Acceptable Conduct Policy."[1] Later that day, the Plaintiff filed a report with the Saint Paul Police Department, in which he alleged that Gray had assaulted him.

During the Plaintiff's suspension, Federal Express discovered that he had allegedly violated the company's "Jumpseat Policy." Under the Jumpseat Policy, eligible employees are allowed to occupy a "jumpseat" for travel on a Federal Express aircraft. The Policy imposes a number of restrictions on the employees who wish to take advantage of jumpseat travel, and provides for disciplinary action, including termination, for any employee who fails to comply with those regulations. Gray informed Federal Express's Human Resources Department that the Plaintiff had violated the Jumpseat Policy by falsifying the requisite documentation, and provided information to that effect, which the Plaintiff challenges as inaccurate. Apparently, as a result of this report, Federal Express extended the Plaintiff's suspension, and ultimately terminated his employment on July 7, 1995. The

---

1. As it turned out, Federal Express concluded that the Plaintiff had not violated the policy and, therefore, no discipline was administered to the Plaintiff as a result of this incident.

Plaintiff contends that these actions were prompted by motives which were both discriminatory and retaliatory.

Through his attorney, on July 27, 1995, the Plaintiff initiated a grievance under Federal Express's Guaranteed Fair Treatment/Equal Employment Opportunity Procedure ("GFTP/EEO"), and he requested that all further correspondence on the matter be directed to the attorney's office. See, *Letter from Fiebiger to Saladino of 7/27/97.* Federal Express's in-house counsel responded by informing the Plaintiff's counsel that he was not permitted to participate in the GFTP/EEO process, stating as follows:

> Federal Express' Guaranteed Fair Treatment Procedure/EEO Complaint Process does not permit the direct involvement of any third party, including attorneys. If Mr. Onwuka wishes to continue the complaint procedure, he must do so in accordance with the policy. If Mr. Onwuka insists on your direct involvement in the procedure, the Company will be compelled to investigate his EEO allegations without further interaction with him. I hope that this will not be necessary.

*Letter from Harris to Fiebiger of 8/7/95.*

As stated in the GFTP/EEO Policy, attorneys are not permitted to serve "as advocates" on behalf of either the company, or the aggrieved employee.

According to the Defendants, Federal Express's attorneys are involved, to some extent, in the resolution of internal discrimination and harassment grievances, which are instituted under the GFTP/EEO process, even though they may not serve as an advocate for the company. See, *Def's. Mem.* at 2. As a consequence, the GFTP/EEO policy includes a boilerplate invocation of work-product, and attorney-client privileges, with respect to materials generated during the EEO/GFTP process, in the following terms:

> Since litigation may result from the complaining employees' dissatisfaction with the Company's decision on the merits of their cases, the Legal Department directs that all investigations be conducted in anticipation of such litigation. All internal documents relating to the complaint are attorney's work products, and all analytical documents and investigations generated in the course of the GFTP/EEO investigations generated in the course of the GFTP/EEO process, including without limitation, internal EEO investigations, are confidential and subject to various privileges against disclosure. Circulation, distribution, or discussion of these documents is strictly limited to those who have a need to know their contents. Written or oral release of the contents of these documents beyond this limited circulation must be approved by the Legal Department.

*Pl.'s Ex. I.*

The Defendants also represent that, when an allegation of discrimination, or harassment, is raised in the grievance process, a separate investigation is conducted, at the direction of the Legal Department, and the Employee Relations Department, in Memphis, Tennessee.

Federal Express conducted an investigation of the Plaintiff's charges of discrimination, and concluded that the Plaintiff had not been subjected to employment discrimination. Thereafter, this action ensued. On July 24, 1997, the Plaintiff brought his Motion to Compel, in which he requests the production of the following documents, each of which the Defendants have refused to produce on the grounds of the either the attorney-client or the work-product privilege, or both:

1. The Federal Express files that were created and maintained by the Employee Relations Department during the course of the internal EEO investigation.

2. The Federal Express files that were created and maintained by the Labor and Employment Division during the course of the internal and external EEO investigations.

3. The Federal Express files that were created and maintained by the Employee Relations Department during the course of the external EEO investigation.

4. A response to Interrogatory Number 7, which requests a detailed description of the investigation that Federal Express conducted into the Plaintiff's complaints of discrimination.

In addition, the Plaintiff requests an Order that would compel the Defendants to provide information, and documents, which are related to disciplinary actions, that have been taken against Federal Express employees nationwide, for violations of the Acceptable Conduct and Jumpseat Policies, within the ten year period from January 1, 1986, to January 1, 1996.

The Defendants have opposed the production of this material on two separate grounds: 1) they contend that the disclosure of information, which relates to disciplinary actions against other employees of Federal Express, would violate the privacy interests of those employees; and 2) they urge that the geographic and temporal reach of these discovery requests is overly broad, and unduly burdensome, in view of the marginal relevance of the requested information.

### III. *Discussion*

Since they involve somewhat differing considerations, we separately address the three bases the Defendants have offered for their opposition to the Plaintiff's discovery requests.

#### A. *The Attorney Work–Product Objection.*

1. *Standard of Review.* As it relates to the workproduct doctrine, Rule 26(b)(5), Federal Rules of Civil Procedure, provides as follows:

> When a party withholds information otherwise discoverable under these rules by claiming that it is *** subject to protection as trial preparation material, the party shall make the claim expressly, and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

To obtain the protection of the work-product privilege, the party asserting the privilege must demonstrate that the material, which has been withheld, meets the definition of attorney work-product. See, *Rabushka ex rel. United States v. Crane Co.,* 122 F.3d 559, 565 (8th Cir.1997).

The work-product doctrine, which was first announced in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and which has been codified in Rule 26(b)(3) Federal Rules of Civil Procedure, shields from disclosure those documents, and other tangible objects, that were prepared in anticipation of litigation either by or for another party, or by or for that party's representative. See, *In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 923 (8th Cir. 1997), cert. denied *sub nom, Office of President v. Office of Independent Counsel,* —— U.S. ——, 117 S.Ct. 2482, 138 L.Ed.2d 991 (1997); *Norton v. Caremark, Inc.,* 20 F.3d 330, 339 (8th Cir.1994). As a practical matter, the scope of the work-product protection is broader than that of the attorney-client privilege since items protected by the work-product doctrine are not confined to confidential communications between an attorney and a client, but extends protection to all "documents and tangible things" that have been prepared in anticipation of litigation, or for Trial. See, *In re Murphy,* 560 F.2d 326, 337 (8th Cir.1977). In addition to ordinary work-product, which may be overcome by a showing of "substantial need" by the party seeking the discovery, "opinion work product enjoys a very nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Chrysler Motors Corp.,* 860 F.2d 844, 846 (8th Cir.1988). Here, however, since the Defendants do not assert that any of the sought after documents contain the mental impressions of their legal counsel, we need only examine the parameters of the ordinary work-product privilege.

In order to satisfy their burden, that the requested material falls within the qualified immunity of Rule 26(b)(3), the Defendants must make three showings; namely, that the materials are: 1) "documents and tangible things;" 2) "prepared in anticipation of litigation or for trial;" and, 3) "by or for another party by or for that other party's representative." *Rule 26(b)(3), Federal Rules of Civil Procedure;* see generally, *Wright & Miller,* § 2024 and cases cited therein.

As to the first factor, according to the great weight of authority, while Rule 26(b)(3)

affords protection for documents and tangible things, the underlying facts are not protected by the work-product doctrine. See, *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995) ("Because the work product doctrine is intended only to guard against the divulging of attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within the work product."); *Phillips Electronics North America Corp. v. Universal Electronics, Inc.*, 892 F.Supp. 108, 110 (D.Del.1995) ("plaintiff may not rely on Rule 26(b)(3) or claims of work product as a basis for refusing to respond to discovery requests seeking the disclosure of non-privileged facts."); *Roberts v. Air Capitol Plating, Inc.*, 1997 WL 446266 at *6 (D.Kan.1997) (plaintiff entitled to discover facts about the Defendant's investigation); but cf., *Arco Pipeline Co. v. S/S Trade Star*, 81 F.R.D. 416, 418 (D.Pa.1978) (counsel's recollection of facts learned from witness interview protected by work-product doctrine). Only when the party seeking discovery attempts to ascertain "historical" facts, which inherently reveal the attorney's mental impressions, does the ordinary work-product privilege extend to protect the intangible interests. See, *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1326 (8th Cir.1986). While the distinction is a fine one, it represents a tenable footing between "unwarranted inquiries into the files and the mental impressions of an attorney," *Hickman v. Taylor*, supra at 510, 67 S.Ct. at 393, and the intolerable prospect that the work-product protections will be employed to shroud otherwise discoverable corporate affairs in a veil of secrecy.

The second test requires us to evaluate the nature of the document in the context of the circumstances under which it was generated, so as to determine whether the document was prepared in anticipation of litigation. See, *In re Grand Jury Subpoena Duces Tecum*, supra at 924. Materials or documents will be protected when they were prepared by, or for, an attorney who "was preparing for or anticipating some sort of adversarial proceeding involving his or her client." *Id.* Conversely, even though litigation may have already been contemplated, materials which are prepared in the regular course of business receive no protection under Rule 26(b)(3). See, *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir.1987), cert. denied, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987); *Lumber v. PPG Indus., Inc.*, 168 F.R.D. 641, 645 (D.Minn.1996).

Finally, as to the third element of proof, the Supreme Court has provided the following explanation which, here, appears to be particularly apt:

> [T]he [work product] doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 2170–71, 45 L.Ed.2d 141 (1975).

Consistent with this view, the 1970 amendments to Rule 26 expressly extend protection to documents which have been prepared by third persons, so long as that preparation was at the direction of an attorney, and in anticipation of litigation.

As noted, the ordinary work-product immunity is a qualified one, that is capable of being overcome by a proper showing of justification on the part of the person seeking discovery. See, *Petersen v. Douglas County Bank & Trust Co.*, 967 F.2d 1186, 1189 (8th Cir.1992). As explained by the Advisory Committee Notes:

> The required showing is expressed, not in terms of "good cause" whose generality has tended to encourage confusion and controversy, but in terms of the elements of the special showing to be made: **substantial need of the materials** in the preparation of the case and **inability without undue hardship to obtain the substantial equivalent** of the materials by other means.

*Rule 26(b)(3), Federal Rules of Civil Procedure, Advisory Committee Note* (emphasis added).

■ The hurdle presented by Rule 26(b)(3), insofar as it relates to "ordinary work-product," is only that the party seeking discovery must demonstrate that it does not have a substantially equivalent alternative for obtaining information, as to which it has a substantial need, without undue hardship.

■ 2. *Legal Analysis.* Here, the Defendants have interposed a baldly framed work-product objection as to all of the documents that were generated during the pendency of the Plaintiff's EEO grievance process, as well as to the "historical" facts of the investigation itself. To support this objection, the Defendants have advanced two justifications. First, the Defendants assert that EEO grievances "are litigious by nature" and, as a consequence, the Legal Department has instituted a policy by which all materials, that have been prepared during the investigation, serve a dual purpose, in that they help to resolve the employees' internal grievances, and they prepare Federal Express for any litigation which may ultimately arise. This general claim of work-product immunity has been memorialized in the GFTP/EEO Policy provision which directs all Federal Express personnel to conduct "all investigations *** in anticipation of litigation." *Pl.'s Ex. I.*

As a second, and narrower, rationale for their work-product objection, the Defendants emphasize that the prospect of litigation was forcefully articulated here by the intervention of the Plaintiff's legal counsel at an early stage of the grievance process. According to the Defendants, the documents at issue were created when "the prospect of litigation was not mere speculation, was not reflective of the mere *possibility* of litigation, but *** with the full knowledge that in all likelihood the case *would result* in litigation." *Defs.' Mem.* at 8 [emphasis in original]. The Defendants do not, however, provide any evidence that the investigation into the Plaintiff's grievance was handled differently, in any appreciable way, than would have been the case if the Plaintiff's attorney had not informed Federal Express that he was representing the Plaintiff.

With respect to the Plaintiff's Requests for Documents from the company's Employee Relations Department, and from its Labor and Employment Division, a blanket claim that all of those documents were specifically prepared in anticipation of litigation, at the direction of Federal Express's legal counsel, and as prescribed by a standing policy of the company, is insufficient to automatically invoke the protections of Rule 26(b)(3). See, *Simon v. G.D. Searle & Co.,* supra at 401. In the corporate setting, all documents which are generated in the ordinary course of business hold some potential for serving as evidence in some future litigation. As a consequence, to allow legal counsel to promulgate a corporate policy, which would insulate the records of an internal investigation from discovery—no matter what their source or purpose—would expand the protections of Rule 26(b)(3), beyond their intended bounds.

The Defendants' narrower position, on the other hand—that, in this particular case, the investigation was conducted in anticipation of litigation—has merit. Nonetheless, the argument lacks specificity such as would permit us to distinguish between those materials which were generated, as a matter of ordinary business whenever the GFTP/EEO process is initiated, and those materials which were prepared at the specific direction of legal counsel, and in contemplation of litigation. Even though Federal Express was forewarned that the Plaintiff had retained legal counsel and, concordantly, was placed on notice that a lawsuit was impending, any materials that would have normally been generated in the regular course of Federal Express's business, would not receive protection under Rule 26(b)(3). See, *Lumber v. PPG Indus., Inc.,* supra at 645.

At the Hearing in this matter, the Defendants represented that much of the materials, for which protection is sought, consist of documents that were prepared by Federal Express personnel, and were transmitted to the company's attorneys, or vice-versa. As to these materials, which appear to have been specifically developed in anticipation of the Plaintiff's lawsuit, the Plaintiff has failed to demonstrate either a substantial need for the documents, or an inability to obtain the substantial equivalent of those documents elsewhere. While we cannot penalize the

Plaintiff for not having the prescience to know what those documents address, sight unseen, the Plaintiff does not suggest that, whatever information those documents might contain, there is not an alternative means available to gather the same information. That is, the Plaintiff has made no showing that critical witnesses are now unavailable, or that essential documents have been destroyed, to identify two common examples of "substantial need." Accordingly, we direct the Defendants to produce all of the materials in the pertinent investigatory files of the two departments, except those documents which were generated in anticipation of litigation, at the specific direction of legal counsel.[2]

■ With respect to the Defendants' refusal to fully respond to Interrogatory Number 7, we find that their objection falls outside the purview of the work-product immunity. By refusing to describe the investigation that Federal Express conducted, as opposed to the documents that were originated in the investigative process, the Defendants propose to free the work-product doctrine from its moorings, for the doctrine is grounded in the protection of documents and tangible things, and "not facts concerning the creating of work product or facts contained within the work product." *Resolution Trust Co. v. Dabney*, supra at 266. Thus, the Defendants may not rely on Rule 26(b)(3) "as a basis for refusing to respond to discovery requests seeking the disclosure

of non-privileged facts," *Phillips Electronics North America Corp. v. Universal Electronics, Inc.*, supra at 110, except to the extent that a request for the disclosure of facts is designed to discover an attorney's opinions or mental impressions. See, *Shelton v. American Motors Corp.*, supra at 1326.

What steps were taken by the Federal Express employees, in investigating the Plaintiff's discrimination and retaliation claims, do not inherently reveal the opinions or mental impressions of its attorneys, as it may be fairly inferred that Federal Express would employ the same general procedures to investigate discrimination and harassment claims, in accordance with the GFTP/EEO Policy, irrespective of their attorneys' mental impressions. Since the Plaintiff is asserting a claim of retaliation, it would seem particularly inappropriate to preclude his discovery of the measures that his employer undertook in response to the charges that he filed. Accordingly, we direct the Defendants to fully respond to Interrogatory Number 7.[3]

B. *The Plaintiff's Requests for Documents and Information Concerning Disciplinary Actions Taken Against Federal Express Employees Nationwide Between 1986 and 1996.*

1. *Standard of Review.* The threshold requirement of discoverability is whether the information sought is "relevant to the subject matter involved in the pending action." *Id.* Of course, to be discoverable, the information

---

**2.** At the Hearing, we reiterated our view that, as a matter of practical reality, the Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable. See, *Lumber v. PPG Industries, Inc.*, 168 F.R.D. 641, 643 n. 1 (D.Minn.1996). As we have stated elsewhere, "we have no means to test the veracity of such avowals, other than to appropriately sanction a recalcitrant party for failing to responsibly honor its discovery obligations." *Id.* It continues to be our view that the failure to produce evidence, without just cause, which is relevant within the context of Rule 26, Federal Rules of Civil Procedure, bears a close relationship to the "spoliation of evidence," and should be sanctioned accordingly. See, *Id.*, citing, *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 280 (8th Cir.1995), cert. denied, 516 U.S. 822, 116 S.Ct. 84, 133 L.Ed.2d 42 (1995); *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 267 (8th Cir.1993); *SDI Operating Partnership,*

*L.P. v. Neuwirth*, 973 F.2d 652, 655 (8th Cir. 1992); *Scout v. City of Gordon*, 849 F.Supp. 687, 690–91 (D.Neb.1994); *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D.Minn.1989); cf., *Baker v. General Motors Corp.*, 86 F.3d 811, 817 (8th Cir.1996), cert. granted, —— U.S. ——, 117 S.Ct. 1310, 137 L.Ed.2d 474 (U.S.Mo.1997).

**3.** Of course, while we hold that certain documents may well be protected by the attorney-client, or the work-product privileges, we do not limit the Plaintiff's right to discover "historical facts," so long as he does not seek the disclosure of the communications between the Defendants and their counsel, or the mental impressions and opinions of the Defendants' legal counsel. Such facts are not protected from disclosure, even if the documents, which relate to those facts, are so protected by privilege. See, *Lumber v. PPG Industries, Inc.*, supra at 645–46 and n. 3.

"need not be admissible at the trial if the information sought appears reasonably calculated to lead to the·discovery of admissible evidence."*Rule 26(b)(1), Federal Rules of Civil Procedure.* The standard, therefore, is widely recognized as one that is necessarily broad in its scope in order to allow the parties essentially equal access to the operative facts. See, *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 382 (8th Cir.1992); *Leighr v. Beverly Enterprises–Kansas, Inc.,* 164 F.R.D. 550 (D.Kan.1996); *Cox v. E.I. Du Pont de Nemours & Co.,* 38 F.R.D. 396, 398 (D.S.C.1965). Notwithstanding the liberality of discovery, however, it is not without bounds. As our Court of Appeals has observed:

> [T]his often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

*Hofer v. Mack Trucks,* supra at 380.

Therefore, despite the liberality of discovery, we will remain reluctant to allow any party to "roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Carlson Cos., Inc. v. Sperry & Hutchinson Co.,* 374 F.Supp. 1080, 1089 (D.Minn.1974); see also, *Blum v. Schlegel,* 150 F.R.D. 38, 39 (W.D.N.Y.1993).

Even when dealing with requests for relevant information, the Rules recognize that discovery may be limited when the benefits to be obtained are outweighed by the burdens and expenses involved. According to Rule 26(b)(2), Federal Rules of Civil Procedure, we are directed to limit discovery upon a determination that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, tak-

ing into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

These factors are not talismanic. Rather, they are to be applied in a common sense, and practical manner. See, *In re Convergent Tech. Securities Litigation,* 108 F.R.D. 328, 331 (D.Cal.1985) ("After satisfying this threshold requirement [of relevancy] counsel must also make a common sense determination, taking into account all the circumstances, that the information sought is of sufficient potential significance to justify the burden the discovery probe would impose, that the discovery tool selected is the most efficacious of the means that might be used to acquire the desired information (taking into account cost effectiveness and the nature of the information being sought), and that the timing of the probe is sensible, i.e., that there is no other juncture in the pretrial period when there would be a clearly happier balance between the benefit derived from and the burdens imposed by the particular discovery effort.").

The breadth of discovery concerning an employer's records is not unchartered waters, for the Supreme Court has acknowledged that, in Title VII cases, "liberal civil discovery rules give plaintiffs broad access to document their claims." *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 657, 109 S.Ct. 2115, 2125, 104 L.Ed.2d 733 (1989); see also, *Coughlin v. Lee,* 946 F.2d 1152, 1159 (5th Cir.1991). The fact that the proof of an unlawful discrimination claim may require indirect, inferential, or circumstantial evidence, accentuates the need, in Title VII cases, for broad discovery. See, *Miles v. Boeing Co.,* 154 F.R.D. 117, 119 (E.D.Pa. 1994); *Robbins v. Camden City Bd. of Educ.,* 105 F.R.D. 49, 55 (D.N.J.1985).

Nevertheless, Courts have recognized that discovery, in the Title VII context, must be limited to the practices at issue in the case and, where an individualized claim of disparate treatment is alleged, the discovery of information concerning other employees should be limited to employees who are simi-

larly situated to the Plaintiff. See, *Ardrey v. United Parcel Svc.,* 798 F.2d 679, 682 (4th Cir.1986), cert. denied, 480 U.S. 934, 107 S.Ct. 1575, 94 L.Ed.2d 766 (1987); *Whittingham v. Amherst Coll.,* 164 F.R.D. 124, 127 (D.Mass.1995); *Robbins v. Camden City Bd. of Educ.,* supra. Accordingly, Courts have frequently tailored discovery requests, as to historic company records, to encompass a "reasonable time period," both before and after the discriminatory event being alleged. See, e.g., *Miles v. Boeing Co.,* supra at 119–120 (discovery of several months before and two years after alleged discrimination "reasonable"); *Finch v. Hercules Inc.,* 149 F.R.D. 60, 64 (D.Del.1993) (scope of discovery would be limited to two years immediately preceding employee's termination); *Smith v. Community Federal Savings & Loan Ass'n,* 77 F.R.D. 668, 671 (N.D.Miss.1977) (16 years too long).

■ Likewise, Courts have often limited the discovery of company records to the local facility, at which the Plaintiff was employed, in the absence of a showing of particularized need for regional or nationwide discovery. See, *Carman v. McDonnell Douglas Corp.,* 114 F.3d 790, 792 (8th Cir.1997) ("Company-wide statistics are usually not helpful in establishing pretext in an employment-discrimination case, because those who make employment decisions vary across divisions."); see also, *Miles v. Boeing Co.,* supra at 120. Even where company records are shown to be relevant, Courts have been reluctant to permit discovery, when the requested disclosures would intrude upon the privacy interests of other, non-party employees. These Courts have concluded that the personnel files of an entire class of employees should not be produced, even in an employment discrimination proceeding, absent a compelling showing of relevance. See, e.g., *Gehring v. Case Corp.,* 43 F.3d 340, 342–43 (7th Cir. 1994) (privacy interests was proper basis upon which to disallow counsel from "root[ing] through the personnel files."), cert. denied, 515 U.S. 1159, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995). As a consequence, a party seeking the discovery of personnel information must demonstrate, notwithstanding the breadth of discovery, that the value of the information sought would outweigh the

privacy interests of the affected individuals. See, *Whittingham v. Amherst Coll.,* supra at 127–28; *Miles v. Boeing Co.,* 154 F.R.D. at 115. On the other hand, "[i]n Title VII litigation, in which plaintiffs are *** required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files." *Coughlin v. Lee,* supra at 1159, citing *Trevino v. Celanese Corp.,* 701 F.2d 397, 405–06 (5th Cir.1983); *Burns v. Thiokol Chem. Corp.,* 483 F.2d 300, 303–07 (5th Cir.1973); *Weahkee v. Norton,* 621 F.2d 1080, 1082 (10th Cir.1980); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 344–45 (10th Cir.1975); *Marshall v. Westinghouse Elec. Corp.,* 576 F.2d 588, 592 (5th Cir.1978). We think the proper balance, between the privacy interests of non-party third persons, and the discovery interests of a party litigant, is to assure that only those portions of the pertinent personnel files, which are clearly relevant to the parties' claims, are open to disclosure and, then, subject to an appropriate Confidentiality Order as the circumstances require.

■ 2. *Legal Analysis.* We agree with the Plaintiff that records of disciplinary actions taken against other Federal Express employees, as they related to violations of the Jumpseat and Acceptable Conduct Policies, are relevant to the Plaintiff's claims of discrimination and retaliation. Such relevancy, however, necessarily diminishes as the time between the Plaintiff's discipline, and that imposed upon a co-employee, increases. Moreover, the fact that the inquiry impinges upon the privacy interests of third-parties argues against the unconstrained production of these records but, unlike the sweeping requests for personnel files, which have been received by the Courts with mounting disfavor, here the Plaintiff's request only seeks the co-employee information that relates to discipline which arises from violations of the Jumpseat and the Acceptable Conduct Policies. We conclude that the limited nature of this requested discovery minimizes the extent to which the privacy interests of non-parties will be sacrificed, but we are persuaded that the discovery must be further limited, in both its temporal and geographical reach, so as to ameliorate the burdensome-

ness of the Defendant's response, but without delimiting the persuasive weight of the information so produced.

In our view, disciplinary measures that have been taken earlier than three years before the Plaintiff's discipline, and that have related to facilities outside of the Saint Paul Station, have no appreciable bearing upon the issues in this case. Although the Plaintiff seeks this information in order to prove that his asserted infractions were treated differently from those of co-employees, the contemporaniety and the physical proximity of any such discipline are critical to its probative weight. Whatever may have been the uniformity of treatment elsewhere, the crux of the Plaintiff's claim is that, for discriminatory reasons, he was treated differently than other workers in the same locale, during the same approximate period of time. The fact that jumpseat use had no locus does not change the reality that, absent some particularized showing, the relevant responsive data will be located in Saint Paul.

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motion to Compel Discovery [Docket No. 10] is GRANTED in part, and DENIED in part, as more fully detailed in the text of this Order.

2. That the Defendant shall review its investigative files and determine which documents, that are contained therein, were generated at the specific direction of an attorney, as to contemplated litigation, and shall provide the Plaintiff with all other documents which are not protected as either work-product or as attorney-client privileged.

3. That the Defendant shall respond to Interrogatory Number 7 consistent with the directives contained in this Order.

4. The Defendant shall respond to Interrogatory Number 10, and Requests for Documents Number 8 and 19, and 24 with information and documents pertaining to relevant disciplinary actions, that were taken during the period from July 7, 1992, to July 7, 1995, at the Saint Paul Station.

