Ava HINTON, Plaintiff,

v.

Marcia CONNER, Individually and as City Manager for the City of Durham; Charlene Montford, Individually and as Director of the Department of Housing and Community Development for the City of Durham, and the City of Durham, Defendants.

No. 1:04CV00004.

United States District Court,
M.D. North Carolina.

Jan. 5, 2005.

514

Stewart W. Fisher, Glenn Mills and Fisher, Durham, NC, for Plaintiff.

Patrick W. Baker, Office of City Attorney, Joel Miller Craig, Kennon Craver Belo Craig & McKee, PLLC, Durham, NC, for Defendants.

## ORDER

ELIASON, United States Magistrate Judge.

Plaintiff has filed a motion to compel discovery of all "technical review" documents for disciplinary actions taken by defendant City of Durham ("City") against its employees from January 1, 1999 to present. Defendant opposes the motion, claiming the discovery request is unduly burdensome and will not reasonably lead to the discovery of admissible evidence.

Plaintiff has brought a civil rights action against the City of Durham and, more specifically, against the Department of Housing and Community Development. This action arose because of her being terminated from her employment in July 2003. She had worked for the City for seventeen years and in the Housing Department from 1995. The termination allegedly violated her federally protected rights of free speech, due process, and equal protection. According to plaintiff, her termination is directly linked to her reporting fiscal mismanagement and/or fraud with respect to the use of federal funds to her supervisors and federal auditors. An investigation led to notoriety and interest by the press. As a result, plaintiff states that defendants City Manager Marcia Conner and Housing Director Charlene Montford received unwanted publicity. Lower manage-

ment individuals were fired. Defendant Montford became furious with plaintiff because of her whistle blower activity and assigned plaintiff to a job with fewer responsibilities. Allegedly looking for a pretext to fire her, defendants seized on the fact that plaintiff's elderly mother's house was weatherized with the use of federal funds in the amount of $1,280.15. This relationship may have created a conflict of interest when plaintiff signed approval forms. (Plaintiff may also have had an interest in the house). However, plaintiff states that she informed her supervisor and the director of the weatherization agency that the house belonged to her mother.

The documents which plaintiff seeks are entitled "technical review" forms. They were developed by the City in order to promote disciplinary consistency in employment actions. Plaintiff alleges that not only did no one complete a technical review form in her case,[1] but also the defendant City was much more lenient with employees who had committed much more grievous offenses, such as soliciting prostitution during working hours and misusing $15,000.00 in City money, and that defendant Montford herself was not terminated, even though she misused $7,000.00 in City funds. Plaintiff further states that the scandal remained an issue for defendant Montford until she quit her job in December 2003. Plaintiff argues that the documents will allow the trier of fact to determine whether plaintiff's discharge was unusually harsh as compared to other disciplinary actions by the City. She claims this will help show that the reasons given by defendant for her termination were false and/or a pretext used to hide an illegal purpose.

Defendant contends that the technical review form is not a record of final disciplinary action, but is only used to ensure that the action taken by the supervisor complies with the City's disciplinary policy. For this reason, defendant argues that the documents will not lead to the discovery of admissible evidence. Second, defendant argues that the forms are not relevant because, for some

---

1. The defendant City alleges that a technical review form for proposed disciplinary action was completed with respect to plaintiff's termination.

years, no one has been charged with a violation of a federal regulation with respect to a relative. Finally, defendant argues that production of the technical review forms would be burdensome because only forms for the years 2003 through 2004 are maintained in current files. The older records back to the year 2000 are in mixed archive files and approximately sixteen hours of staff time would be required to extract the documents. Defendant does not state whether the forms are recoverable for the year 1999.

Resistance to discovery based on lack of relevance and burdensomeness is controlled by the provisions of Fed.R.Civ.P. 26(b)(1) & (2). Subsection (1) provides that a party may obtain discovery of any non-privileged matter relevant to a claim or defense, but that such information need not be admissible at trial so long as it appears to be "reasonably calculated to lead to the discovery of admissible evidence." In the instant case, plaintiff seeks to use the comparative evidence of disciplinary infractions as circumstantial evidence to show that the reasons given for her termination were untrue or a pretext. Such evidence may be relevant to the issue of intent in a case such as the instant one where plaintiff is attempting to show that she was discharged from employment because of her whistle blowing activities. This type of issue most usually arises in discrimination cases where a plaintiff seeks to rely on the *prima facie* evidence presumption established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff will use comparative evidence to establish a *prima facie* case by showing he or she suffered an adverse employment action and was treated less favorably than similarly situated persons.[2] Therefore, an examination of those types of cases will help in the decision which must be made in the instant case.

The purpose of using the *McDonnell Douglas prima facie* model, or in this case, allowing the use of comparisons as circumstantial evidence of intent, is designed to force an employer to reveal information which is only available to the employer, *i.e.,* any unstated reasons for taking the action, as well as any "discretionary factors underlying defendant's decision to discipline two individuals differently." *Moore v. City of Charlotte, NC,* 754 F.2d 1100, 1106 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). The courts and Congress, at least in discrimination cases, have held that whenever an impermissible factor "motivates" a decision, such a decision is flawed. *Rowland v. American General Finance, Inc.,* 340 F.3d 187, 192 (4th Cir.2003), *discussing, Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). Defendant has not shown that this standard will not be applied here; but, even if it is not, the evidence may be relevant to defendant's credibility.

Any decision may well have multiple reasons prompting it. However, the law looks to those factors considered to be *sine qua non*—those without which the particular decision would not have been made. An employer is then held responsible for decisions based on those factors. However, not only may a decision have multiple reasons, but the very nature of dissecting a decision in retrospect can make it difficult to ascertain the "one and true" reason for a decision. Some reasons may be discovered or even invented *post hoc.*[3] The use of comparison evidence allows a plaintiff to discover an employer's intent and test the proffered reason for taking the adverse employment action. Therefore, when the issue in a case involves discovering the true reason for terminating an employee, the use of comparison evidence can be relevant, if not critical to a plaintiff's cause.

Defendant argues that while comparisons might be relevant in general, the documents sought in this case are not because no employee has been disciplined, at least not for some time, for violating a federal regulation

---

**2.** A plaintiff must also fit within a protected class, *i.e.,* race, sex, etc., and claim that he or she met the employer's legitimate expectations.

**3.** When the reason consists of after-acquired evidence, the burden of proof shifts to the employer who must prove that if it knew of the factor, it would have taken the adverse action on those grounds alone. *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1238 (4th Cir.1995).

which also involved the person's relative. The Court rejects that argument because its focus it too narrow. First, it will be helpful to identify the decision factors which are important in discovering intent in a disciplinary context. The two major factors are (1) "the nature of offenses committed," and (2) "the nature of the punishments imposed." *Moore*, at 1105. Other factors involve the employee's work history, including disciplinary history, whether the two employees to be compared engaged in similar conduct, were subject to the same or similar standards, and had the same supervisor, as well as any differences in mitigating circumstances. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 512 (4th Cir.1993); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir.2002). While it would be desirable to have the comparisons be as close as possible with respect to all of these factors, an identical similarity is often impossible. *Moore*, at 1107. In such instance, a court may focus on the harm caused or threatened to the employer or other victim of the conduct and the culpability of the offender in comparing the action against plaintiff to the action taken against others to see if the situations are sufficiently similar to be useful as comparison evidence. *Id.* In so doing, the Court should give at least initial deference to any employer created categorization of the seriousness of the various offenses. *Moore*, at 1108.

Turning to the facts of the instant case, defendant argues that the information sought will capture information of widely disparate circumstances, completely unrelated to the specifics of plaintiff's case. However, the City has not suggested a more restricted category of documents it would be willing to produce.

Normally, comparisons of employees disciplined in different departments by different supervisors will not be particularly helpful or relevant. However, there are unusual circumstances in this case. The nature of the controversy may make the records of other departments relevant. In the instant case, plaintiff alleges that she was a whistle blower informing her supervisor and authorities of mismanagement and possible corruption in the Housing Department. Moreover, she claims that her own supervisor was involved in the scandal, at least by her inaction,

and that the entire scandal became a public matter so that the City and the City Manager would have had a direct interest in plaintiff's case, and plaintiff claims they had some interest in and/or control over the adverse employment action taken against her. In such circumstances, the controversy and its importance extend beyond plaintiff's own department. Therefore, examination of the City's treatment of other employees in other departments could be relevant in this case.

Additional reasons also convince the Court that the discovery request is not overly broad. First, defendant has not shown that plaintiff was subjected to a different standard than other City employees. Nor has it shown that it simply followed a predetermined categorization in disciplining plaintiff. This means that the standard applied to plaintiff should be applicable to all of the employees in the technical review data base, and because the decision involved considerable discretion, a wider basis for comparison could be helpful. Nor does defendant show that plaintiff's alleged conflict of interest and/or the resulting harm was materially different because it violated a federal regulation as opposed to a state or city standard. Thus, there may be a number of disciplinary violations which will be found to be similar to plaintiff's even outside of plaintiff's department. Furthermore, a broad range of disciplinary violations may be both necessary and helpful for comparison because, in this case, plaintiff alleges the special mitigating factor of informing her supervisor and federal authorities of the potential conflict.

Finally, even though the technical review forms are not evidence of final agency action, they appear to be a very handy method to identify potential disciplinary actions which would have relevance to this case and quickly weed out the others. Therefore, the Court finds that plaintiff has satisfied the relevance requirements of Rule 26(b)(1).

The defendant City's second argument alleging the burdensomeness of production implicates Rule 26(b)(2). That subsection sets out a number of factors which the Court may consider in reviewing an argument of burdensomeness. In the instant case, plaintiff wants the records for a six-year time period.

It appears that the records for the years 2003 and 2004 are already in files which may be reviewed. The records for the years 2000 through 2002 would take approximately sixteen hours of staff time to accumulate, according to defendant.

In most every case where information about similarly situated employees is sought, the issue of what would constitute a reasonable time period necessarily arises. *See Onwuka v. Federal Express Corp.,* 178 F.R.D. 508, 517 (D.Minn.1997). In the instant case, neither party has addressed the issue of relevant time period in a way which is helpful for the Court's decision. Having a broad time period permits a plaintiff to obtain more information and there is a greater likelihood of finding an employee who was disciplined in similarly situated circumstances as the plaintiff. And, a broad history is not necessarily inimical to a defendant. That is because if there are a number of similarly situated employees, then a court will look at the entire employment history, not just whether one employee was treated more favorably than the plaintiff when others were not. *Cook,* 988 F.2d at 512. On the other hand, choosing a broad period can significantly increase litigation costs to the parties, but particularly the defendant. The benefits and burdens must be balanced.

Looking at the factors in Rule 26(b)(2), the Court finds that while the technical review forms do not contain final employee action, they provide a very quick means and a relatively inexpensive method of being able to identify potentially comparable employee disciplinary actions taken by the City. The comparison evidence is relevant and often the only way to prove an employer's motive and intent. The fact that it might take sixteen hours to obtain the records for the years 2000 through 2002 is not shocking or otherwise extraordinary. Defendant Montford was hired as the new Director of Housing in 2002 and almost immediately afterward plaintiff began relaying information concerning misconduct and the handling of federal funds. Because the controversy in this case may extend beyond plaintiff's direct supervisor, obtaining comparison evidence prior to 2002 possibly might be helpful. But more importantly, it appears that obtaining 2002 records will involve reviewing 2000 and 2001 records. Therefore, even if it is questionable that the 2000 and 2001 records will be relevant, the cost of obtaining them is sufficiently marginal so as to justify obtaining them now. It appears from defendant's brief that the records for 1999 are not available and plaintiff has not shown that having information for the year 1999 would be particularly beneficial. The longer the time period from the incident, the less likely an incident may be considered similar. Considering these factors, the Court will grant plaintiff's motion to compel for the years 2000 through 2004.

Finally, while not raised by the parties, in all instances where employment records of non-parties are sought, particularly disciplinary records, there is a privacy interest involved for which some protection may be considered even *sua sponte. Onwuka, supra. See George v. Industrial Maintenance Corp.,* 305 F.Supp.2d 537, 541 (D.Vi.2002)(salary information). In such situations, the Court may consider ordering production of the information under a confidentiality order or in the form of summary data with particularized information omitted. Consequently, the Court will order the production of this information, but instruct the parties to keep it confidential and remove employee identification information whenever possible.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel defendant City of Durham to comply with the requests for production no. 53 (docket no. 15) be, and the same hereby is, granted for the years 2000 through 2004. Defendant City of Durham shall produce the records forthwith and the parties are instructed that such information shall be treated as confidential and only used for purposes of this case and to the extent possible, the personal information identifying an employee should be removed or omitted when the documents are used in this case.