FRANCES R. SPRADER, TRUSTEE FOR HEIRS OF
ALEXANDER A. SPRADER, AND ANOTHER v.
HOWARD C. MUELLER.
LENA VOSSEN v. HOWARD C. MUELLER AND OTHERS.
JUNE L. BERG, TRUSTEE FOR HEIRS OF RICHARD A. BERG,
v. FRANCES R. SPRADER AND OTHERS.
HOWARD C. MUELLER v. FRANCES R. SPRADER, SPECIAL
ADMINISTRATRIX OF ESTATE OF ALEXANDER
A. SPRADER, AND ANOTHER.

121 N. W. (2d) 176.

March 15, 1963—Nos. 38,593, 38,594, 38,595, 38,596, 38,597.

112

*Miley, Narveson & Williams* and *David W. Nord,* for appellant.
*Meagher, Geer, Markham & Anderson, O. C. Adamson II, M. J. Coyne,* and *Arthur R. Lindeman,* for respondent Sprader.
*Johnson & Ildstad* and *Paul Johnson,* for respondent Berg.
*Herbert W. Estrem* and *Leonard E. Oslund,* for respondent Vossen.

Otis, Justice.

These five actions arose out of a two-car collision and were consolidated for trial, resulting in verdicts in favor of all of the claimants against appellant, Howard C. Mueller.

Between 12:30 and 1 a. m. on February 22, 1959, Mueller and one Richard A. Berg were traveling north in Brooklyn Park on Highway No. 52, also known as Osseo Road, in a car owned by Mueller, when they collided with an automobile which had approached from the east on 68th Street, driven by Alexander A. Sprader, in which Frances R. Sprader and Lena Vossen were passengers. As a result of the accident, Berg and Sprader were killed, and the other occupants of both vehicles were injured. Actions for wrongful death were brought against Mueller and the estate of Sprader by Berg's trustee, and by Sprader's trustee against Mueller. Mrs. Sprader sued Mueller, Muel-

ler sued the estate of Sprader, and Mrs. Vossen sued both Mueller and the Sprader estate.

■ The trial court charged the jury that as a matter of law they must find Mueller was the driver of his vehicle when the collision occurred. Appellant contends this was a jury question and assigns the court's ruling as error.

Shortly before the accident, Mueller and Berg had left a bar in north Minneapolis. Thereafter, Mueller was driving the car when it ran out of gas, and he was required to take a can to a service station for refilling. Mueller cannot recall who drove his car subsequent to that incident. There was testimony by Mrs. Berg that while Mueller was in the hospital he admitted to her he was the driver. Both occupants were thrown from the car by the impact, but there was no evidence of where they were found after the accident except that they were on the pavement in front of the Mueller vehicle. Mueller testified that a shoe found near the front left door of his car was not his. On previous occasions Mueller had permitted Berg to drive the car. In this state of the record we hold that it was not error for the trial court to hold that Mueller was the driver as a matter of law.

We adopt the rule supported by the great weight of authority that where the owner is an occupant of his own vehicle at the time of an accident, it is prima facie evidence that he was the driver.[1] Such circumstances create a rebuttable presumption that the owner was in control, and he has the burden of overcoming that presumption. In the absence of direct evidence because of death or amnesia, and where, as here, the circumstantial evidence is wholly inconclusive, it is the duty of the court to hold that the owner was the driver when the accident occurred.

■ Mueller called as a witness an employee of the Hennepin County Attorney's office. Sprader's counsel demanded an offer of proof. Mueller's counsel then advised the court that he wished to show

---

[1] Moore v. Watkins, 41 Tenn. App. 246, 251, 293 S. W. (2d) 185, 187; Anderson v. Launer, 13 Ill. App. (2d) 530, 535, 142 N. E. (2d) 838, 840; Grinstead v. Anscer, 353 Mich. 542, 544, 92 N. W. (2d) 42, 43; 9B Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 6057.

that the county attorney's office had in its files a copy of a statement which Mrs. Sprader had made to an investigator for her own liability carrier in anticipation of trial. Specifically, counsel for Mueller offered to prove:

"* * * [I]t was a statement obtained by the investigator for her attorney, Mr. Lindeman, who voluntarily turned it over to the Assistant County Attorney, Mr. Gearty, and through that statement I propose to show through impeachment of her present testimony, and which she has now changed it, that her husband did not stop for that stop sign as the stop sign that was at the highway and not the stop sign at the service road.

"* * * That the method in which we propose to show this, Your Honor, is simply to secure the piece of paper from this young lady, turn her loose and then ask Mrs. Sprader whether, in fact, she made such a statement. We do not offer, at this time, the statement in evidence."

In objecting to the evidence on the ground it constituted a confidential communication from a client to her attorney, Mrs. Sprader's counsel stated:

"I went to Gearty and asked him to attempt to take finger prints of the steering wheel; then he discussed the matter with me and asked me, in lieu of bothering her in the hospital, if I would give him any statement that she had given. I did not take the statement, but I had a copy of it, and I gave it to Gearty, with the understanding that it would not be divulged."

The court sustained objection to the offer on the ground the evidence was confidential and said, "[T]here may be other reasons, too."

It is apparent that appellant was attempting to lay a foundation for asserting a waiver of privilege by showing that a copy of the communication was in the possession of a third person. While counsel advised the court that it was to be used against Mrs. Sprader for impeachment purposes, if it was admissible at all it was substantive evidence because she was a party to the action. Although no demand was made for the original document, we believe the court's ruling ef-

fectively shut the door on additional attempts to introduce the statement into evidence, and that counsel for Mueller was justified in adhering to the ruling without pursuing the matter further.

That the statement was extremely significant is obvious from the sequence of events and the physical circumstances confronting the two vehicles as they approached the intersection. Highway No. 52 at 68th Street is a divided thoroughfare. The Sprader vehicle was governed by two arterial highway stop signs before reaching the concrete portion of No. 52 from the tarvia surface of 68th Street. One sign was on the right at the entrance to a service road, east of No. 52, which Sprader had to cross; the other sign was at the entrance to the main highway and was located to Sprader's right, on a grass divider between the main highway and the service road.

On direct examination Mrs. Sprader testified:

"Q. Now, when you approached No. — concrete Highway No. 52, what, if anything, did you observe Mr. Sprader do with the driving of your car?

"A. We stopped.

"Q. And do you know where you stopped with respect to the easterly edge of the concrete?

"A. A few feet off the concrete."

On cross-examination she said:

"Q. Now, he [Mr. Sprader] made a stop before entering onto the highway, didn't he?

"A. Yes.

"Q. Do you know which of the two stop signs he stopped for?

"A. We stopped once that I remember.

"Q. And do you know which stop sign for sure that was?

"A. By the highway.

"Q. And was that stop sign just to the right of your car or would it be to the left of your car?

"A. It was to the right.

"Q. And would it be within say 10 to 15 feet of the car when you stopped?

"A. It was a few feet.

"Q. Well, a few feet, all right. Then, he proceeded out onto the highway and that is the last you remember?

"A. After we let the two cars go by."

The statement of Mrs. Sprader which Mueller attempted to introduce contained the following:

"We then started for home. My husband then drove about 5 blocks and we were then at highway #52. We stopped for the stop sign. This is located *by the service drive.*

"My husband and I looked to the left and we saw 2 cars coming and they were going north.

"We were facing west on 68th and were going to make a left turn to go south or into Mpls. I saw 4 head lights and they went by at a normal rate of speed. I do not know how far we were east of the intersection when the cars passed. My husband and I then looked to our north or right and there were no cars coming. Being that we had looked to the left we knew there was no traffic and my husband then started out and that is all I remember." (Italics supplied.)

Mrs. Sprader's two versions make it clear that her husband stopped for only one of the two signs. Appellant asserts that if he were permitted to present to the jury Mrs. Sprader's statement that her husband stopped only once, and that this occurred *at the service road,* it would permit him to argue to the jury that Sprader stopped only at the first sign and not at the second, and that he turned left into the wrong, one-way, northbound traffic lane, believing he had already traversed it, having mistaken the service road for the lane on which appellant was traveling.

On the question of what constitutes a waiver of the attorney-client privilege,[2] there is no clear-cut authority in Minnesota dealing with

---

[2] Minn. St. 595.02(2): "An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional duty; nor can any employee of such attorney be examined as to such communication or advice, without the client's consent."

the problem of a confidential communication divulged to a third person by an attorney who neither occupies the position of an adversary to the recipient[3] nor has a concert of interest with him.[4] The existance of the privilege is a question of fact which must be proved by the one asserting it.[5]

It is axiomatic that an attorney enjoys broad authority in dealing with the procedural aspects of his client's cause. In modern practice pretrial discovery has resulted in the routine exchange of information on a voluntary basis to obviate the expense of taking formal depositions. We believe that within limits which do not offend our sense of professional propriety (however elusive this definition of the rule may prove to be), an attorney has the right to use privileged matter for legitimate bargaining purposes. In so doing, he may waive the privilege without committing any breach of his ethical obligation to respect his client's confidences.

In the case at bar, counsel for Mrs. Sprader was dealing with a stranger to the cause. Although the record is sketchy, it appears that counsel was anxious to have the prosecutor use his position to secure fingerprints from the Mueller steering wheel to establish the identity of the driver. In exchange he was willing to divulge his client's statement, both to spare her an interview and to accommodate the county attorney.[6] Under these circumstances, we hold that he had implied authority so to do, and that it was error to deny appellant an opportunity to lay a foundation for showing the attorney-client privilege had been waived. In this conclusion we find support in 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2325(1):

"Since the attorney has implied authority from the client (§ 1063 *supra*) to make admissions and otherwise to act in all that concerns

[3]Halloran v. Tousignant, 230 Minn. 399, 403, 41 N. W. (2d) 874, 877.

[4]Schmitt v. Emery, 211 Minn. 547, 554, 2 N. W. (2d) 413, 417, 139 A. L. R. 1242.

[5]Brown v. St. Paul City Ry. Co. 241 Minn. 15, 34, 62 N. W. (2d) 688, 701, 44 A. L. R. (2d) 535; State v. Anderson, 247 Minn. 469, 477, 78 N. W. (2d) 320, 326.

[6]The record does not permit a finding that Mrs. Sprader's statement was privileged under § 595.02(5).

the management of the cause, all disclosures (oral or written) *voluntarily* made to the opposing party or to third persons in the course of negotiations for settlement, or in the course of taking adverse steps in litigation (e. g., in serving notices), are receivable as being made under an implied waiver of privilege, giving authority to disclose the confidences when necessary in the opinion of the attorney. This is so unless it appears that the attorney has acted in bad faith toward the client."

If the evidence which is received on the issue of waiver substantially conforms to what appellant has offered to prove, we hold the privilege has been waived, and Mrs. Sprader's statement, identified as appellant's exhibit 1, is admissible.

■ If the privilege has not been waived, it need not be invoked in open court in the presence of the jury. The factors which prompted us to hold otherwise in Nelson v. Ackermann, 249 Minn. 582, 597, 83 N. W. (2d) 500, 510, are not present. Since the jury is unaware of the existence of Mrs. Sprader's statement, there is no danger of their drawing any odious inference against the wrong party on the issue of who is responsible for excluding the evidence.

The matter is reversed and remanded with directions to grant a new trial on the issues of liability only, reserving for a separate trial thereafter if need be the determination of appellant's damages, without requiring that the damages of the other parties be relitigated if they are entitled to recover.

Since, however, a new trial on liability is not necessary if the statement of respondent Sprader is ultimately to be excluded from evidence, the court shall proceed under Rule 16 or Rule 42.02, Rules of Civil Procedure, to resolve that issue before requiring a trial on the merits.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.