*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0480**

State of Minnesota,
Respondent,

vs.

Rip Wayne Rust,
Appellant.

**Filed April 4, 2016
Affirmed; motion denied
Reyes, Judge**

Hennepin County District Court
File No. 27CR1421675

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Peterson, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**REYES**, Judge

On appeal from his conviction of first-degree driving while impaired (DWI), appellant argues that the prosecutor committed prejudicial misconduct by introducing inadmissible evidence that deprived him of a fair trial. We affirm.

## FACTS

On July 25, 2014, appellant Rip Wayne Rust was arrested for DWI. At his jury trial, both appellant and the arresting officer testified. Each offered a very different account of what occurred on the date of the offense.

The officer testified that at approximately 2:50 p.m. on the date of the offense, he noticed a vehicle with heavy front-end damage and smoke coming from the engine parked at a green light. The vehicle was stopped in a traffic lane, blocking a vehicle behind it. As the officer neared the scene, he saw a man flagging him down. The officer activated his emergency lights and parked in front of the vehicle, which was running when he arrived. As he approached the vehicle, the officer noticed appellant was slumped over the steering wheel, sleeping. After waking appellant, the officer and his partner helped appellant out of the vehicle and had him take a seat on the curb because appellant was having difficulty standing.

According to the officer, appellant stated that he was coming from work, where he had consumed some beer. Appellant also stated that he was on Oxycodone and believed that was why he fell asleep at the wheel. The officer administered field sobriety tests, which appellant failed. The officer concluded that appellant was under the influence of

2

alcohol and placed him under arrest. The officer then took appellant to the police department, where he was given the opportunity to consult with an attorney. The officer believed that appellant made three phone calls and received one call back from a lawyer. Appellant agreed to take a breath test, the results of which indicated that appellant's alcohol concentration was 0.12.

Next, appellant testified. Appellant stated that, while at work, he received a phone call from his son just before noon. He learned that his son had been involved in a hit-and-run accident, rendering the vehicle inoperable. Appellant left work at noon and took a bus to the scene of the accident. When he arrived, he looked over the vehicle but could not get the hood open. He called his friend who owns a tow company, but his friend was unable to tow the vehicle until later in the day. In exchange for a bottle of liquor, a gentlemen[1] offered to stay with the vehicle while appellant's son went to work and appellant went home. Appellant also bought himself a bottle of alcohol, which he drank while he was at home. He later got a ride back to the vehicle and was texting his friend who owns the tow company, not sleeping, when the officer arrived.

On cross examination, the following exchange occurred regarding the phone calls appellant made while at the police department:

> [PROSECUTION]: All right. Now, do you recall being at the Robbinsdale Police Department?
> [APPELLANT]: Yes.
> [PROSECUTION]: Do you recall getting some phonebooks to make some phone calls?
> [APPELLANT]: Yes.

---

[1] This individual is identified in the record as "Ed." According to appellant, Ed is not a friend of his and was simply at the liquor store when appellant got there.

. . . .

> [PROSECUTION]: Do you recall actually making some calls?
> [APPELLANT]: I do, yes.
> [PROSECUTION]: Do you recall telling somebody on one of those calls that you hit a Cemstone cement truck?
> [DEFENSE COUNSEL]: Objection, Your Honor. May we approach?
> [APPELLANT]: I did not say that.
> THE COURT: Hang on.
> [REPORTER'S NOTE: Whereupon, a brief discuss[ion] was held at the bench, off the record, and out of the hearing of the jury.]
> THE COURT: I'll reverse my ruling and overrule the objection. His answer that he denied making that statement will stand.
> [PROSECUTION]: You did make a couple of phone calls that afternoon, is that correct, when you were at the Robbinsdale Police Department?
> [APPELLANT]: Yes, ma'am.

The jury found appellant guilty of driving with an alcohol concentration of 0.08 or more in violation of Minn. Stat. § 169A.20, subd. 1(5) (2012).[2] The district court sentenced appellant to 57 months in prison. This appeal follows.

**D E C I S I O N**

**I. The prosecutor did not engage in misconduct.**

Appellant argues that the prosecutor's prejudicial misconduct of questioning appellant about statements covered by the attorney-client privilege deprived him of a fair trial and therefore requires reversal. We disagree.

---

[2] The elements of this offense are (1) physical control of the vehicle, (2) time and place, and (3) blood alcohol concentration in excess of 0.08. Throughout his district court proceedings, appellant disputed the physical control element. Appellant does not dispute any of these elements on appeal.

4

If a prosecutor engages in misconduct during trial, an appellate court must determine whether the misconduct denied appellant a fair trial. *State v. Dobbins*, 725 N.W.2d 492, 506 (Minn. 2006). When reviewing objected-to prosecutorial misconduct, we utilize a harmless-error test, "the application of which varies based on the severity of the misconduct." *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012).[3] In cases involving unusually serious prosecutorial misconduct, "we require certainty beyond a reasonable doubt that the misconduct was harmless before we affirm." *Id.* at 150. In cases of less-serious misconduct, we will not reverse unless it is likely that the misconduct "played a substantial part in influencing the jury to convict." *Id.*

When reviewing a claim of prosecutorial misconduct, we must first engage in the threshold inquiry of determining whether the prosecutor engaged in misconduct. *See State v. Fields*, 730 N.W.2d 777, 782 (Minn. 2007). Attempting to or actually eliciting clearly inadmissible evidence may constitute prosecutorial misconduct. *Id.* Statements made by a defendant to counsel over the phone, seeking legal advice, are protected from disclosure by the attorney-client privilege, even if overheard by the police. *See State, Dep't of Pub. Safety v. Held*, 311 Minn. 74, 76, 246 N.W.2d 863, 864 (1976) (noting that "driver's rights are sufficiently safeguarded by a rule which forbids the use in evidence of any statements made by defendant to his counsel over the telephone which are overheard by police"). But the party asserting the privilege has the burden to show that it applies.

---

[3] We note, however, that the Minnesota Supreme Court has indicated that the two-tiered test under *State v. Caron*, 300 Minn. 123, 127-28, 218 N.W.2d 197, 200 (1974), is of questionable viability. *See, e.g.*, *State v. McDaniel*, 777 N.W.2d 739, 749 (Minn. 2010); *State v. McCray*, 753 N.W.2d 746, 754 n. 2 (Minn. 2008).

*Kobluk v. Univ. of Minn.,* 574 N.W.2d 436, 440 (Minn. 1998); *see also Sprader v. Mueller*, 265 Minn. 111, 117, 121 N.W.2d 176, 180 (1963) ("The existence of the privilege is a question of fact which must be proved by the one asserting it."). "The availability of a privilege established under statutory or common law is an evidentiary ruling to be determined by the trial court and reviewed based on an abuse of discretion standard." *State v. Gianakos*, 644 N.W.2d 409, 415 (Minn. 2002).

Here, appellant failed to meet his burden of establishing that the attorney-client privilege applied. Appellant offered no proof that he was on the phone with an attorney, nor does anything in the record establish that appellant was speaking to an attorney. Furthermore, in response to the prosecutor's question, appellant denied making the statement in question. The privilege cannot apply to a non-existent communication. *Schwartz v. Wenger*, 267 Minn. 40, 42, 124 N.W.2d 489, 491 (1963) (noting that attorney-client privilege applies to confidential *communications*). Therefore, the prosecutor did not commit misconduct by questioning appellant about statements he denied making while on the phone at the police department.

Even if we were to assume that appellant did make the statement to an attorney, despite his denial, there is still no indication that the prosecutor engaged in misconduct. Appellant cites *State v. Harris*, 521 N.W.2d 348 (Minn. 1994), and *State v. Mayhorn*, 720 N.W.2d 776 (Minn. 2006), to support his position. But *Harris* and *Mayhorn* are distinguishable. First, in both cases cited, there was a pretrial ruling with respect to the elicited testimony, so the prosecutors were aware that the testimony sought was inadmissible. *Mayhorn*, 720 N.W.2d at 789 (noting that "the state had no good faith

6

basis to believe these apparent threats would have been admissible"); *Harris*, 521 N.W.2d at 354 (discussing the prosecutor's attempts to introduce evidence of prior bad acts, something which "the trial court had specifically instructed her not to do"). Conversely, here, there was no pretrial ruling and therefore no indication that the prosecutor knew that the inquired-about statements were subject to the attorney-client privilege. Additionally, the prosecutors' conduct in *Harris* and *Mayhorn* was much more egregious. *Mayhorn*, 720 N.W.2d at 791 (discussing the prosecutor's misconduct as a "pervasive force at trial"); *Harris*, 521 N.W.2d at 354 (stating that it seemed to be "the prosecutor's single-minded determination to bring in a guilty verdict" even at "the cost of undermining the value of the trial as a truth-determining process"). The prosecutor in the instant case made only two inquiries directed at appellant's telephone conversation at the police department and moved on.

Moreover, even if we were to assume without deciding that the prosecutor in this case committed misconduct requiring us to apply the most stringent standard of review, we would nevertheless affirm because the verdict was "surely unattributable" to the misconduct. *Dobbins*, 725 N.W.2d at 506. A new trial generally is not granted if the misconduct was harmless beyond a reasonable doubt. *Carridine*, 812 N.W.2d at 146. Factors to be considered when evaluating the impact of the misconduct are the frequency of the improper remarks, strength of the state's other evidence, and whether cautionary jury instructions were given. *Mayhorn*, 720 N.W.2d at 786 (discussing number of references to improperly admitted evidence as affecting the analysis of the impact of the prosecutor's misconduct); *Caron*, 300 Minn. at 128, 218 N.W.2d at 200 (discussing the

7

strength of the state's other evidence); *see also State v. Young*, 710 N.W.2d 272, 281

(Minn. 2006) (discussing instructions given to the jury).

Here, the prosecutor asked only two questions aimed at the allegedly inadmissible

statements and did not discuss them again.  In addition, the state's other evidence against

appellant was strong.  The officer testified to a reasonable series of events that occurred

on the date of the incident.  Appellant, on the other hand, provided a story that the jury

did not find credible.  Finally, the district court instructed the jury twice that questions

and statements made by the attorneys during trial do not constitute evidence.  In

conclusion, even if we were to assume that the prosecutor's questions were improper, the

misconduct was harmless beyond a reasonable doubt.

## II.    **Respondent's motion to supplement the record is denied.**

Respondent filed a motion to supplement the record on appeal.  Appellant opposes

this motion.  Minn. R. Civ. App. P. 110.05 provides,

> If anything material to either party is omitted from the record
> by error or accident or is misstated in it, . . . the appellate court,
> on motion by a party or on its own initiative, may direct that
> the omission or misstatement be corrected, and if necessary
> that a supplemental record be approved and transmitted.  All
> other questions as to the form and content of the record shall
> be presented to the appellate court by motion.

*See also* Minn. R. Crim. P. 28.01, subd. 2 (instructing that the Minnesota Rules of

Appellate Civil Procedure apply to criminal appeals).  Because respondent is not seeking

to introduce evidence that was omitted from the record by error or accident, or to correct

a misstatement, its motion is denied.  Furthermore, the proffered evidence is unnecessary,

as it was appellant's burden to prove that his statements were covered by attorney-client privilege.  *Kobluk*, 574 N.W.2d at 440; *Sprader*, 265 Minn. at 117, 121 N.W.2d at 180.

**Affirmed; motion denied.**